166      503
e173  2  13
96a   2  77
98a      539

# MARX et al. v. HART et al.; HARKNESS et al., garnishees, Appellants.

## Division Two, January 17, 1902.

1. **Appellate Jurisdiction:** UNCONSTITUTIONAL STATUTE: USURIOUS INTEREST: INVALID MORTGAGE. An instruction to the effect that there was no usurious interest paid on a·note in suit, made prior to the enactment of the Act of 1891, and secured by a pledge made in 1894, so raises a constitutional question, in that it attacks, as an *ex post facto* law, the Act of 1891, which renders invalid a mortgage or pledge when it shall appear that the party holding such lien has exacted or received usurious interest, as to give the Supreme Court jurisdiction of the appeal.

2. **Garnishment:** APPEAL: BANKRUPT: DISCHARGE OF GARNISHEE. A discharge in bankruptcy of the attachment defendant by the Federal court, after there has been a final judgment against the garnishee in the circuit court and an appeal and supersedeas bond, does not discharge the garnishee, or divest the court of jurisdiction to enforce the rights which have accrued to the attachment plaintiff in the garnishment proceedings against the garnishee.

3. ———: JURISDICTION: OFFICER'S RETURN. The return of the officer in garnishment that he delivered a copy of the summons of garnishment marked "Exhibit A," in Jackson county, Missouri, on June 23, 1894, to the garnishee, which copy he makes a part of his return, and in which he "notified" the garnishee that he attached in his hands all debts due by him to defendant, together with all personal property, money, etc., is a sufficient compliance with the statute which says he shall "declare to" the person in possession thereof that he attaches the same in his hands. The ·effect of such written notice was to attach all the personal property of the defendant in·the garnishee's possession, and gave the plaintiff the right to hold the garnishee personally liable for the value of such property, though not giving him a full and clear lien upon the specific property as against third parties. It gave the court jurisdiction over the garnishee and the subject-matter of the action, and the lien thereby acquired was not discharged by a subsequent discharge in bankruptcy of the attachment defendant.

4. Garnishment: SERVICE ON PARTNERS. A service in garnishment on one partner who has possession of the goods, gives the court jurisdiction of the subject-matter, and the voluntary appearance of the other partner gives jurisdiction of him personally.

5. Lost Deposition: ADMISSIONS. The deposition of a garnishee was by agreement taken in shorthand, and written out and handed to the witness, who made many interlineations and then had his own stenographer copy it and then signed and filed it. Thereupon the notary, refusing to certify the deposition in this shape, made a copy of his stenographic notes, and filed that as the deposition, but this at the trial was lost. *Held,* that under the circumstances the notary was a competent witness to testify that the garnishee had admitted that he had charged defendant two per cent interest per month on the note to secure which the goods garnished were pledged to him.

6. ————: GARNISHMENT: USURIOUS MORTGAGE. The attaching creditor in a garnishment has the right to attack as usurious a mortgage given by the defendant to garnishees. The attaching creditor, proceeding by garnishment, is not a stranger to such usurious mortgage, nor a general creditor, but has rights superior to either, and can invoke the statute which makes invalid such usurious mortgage or pledge.

7. ————: ————: RETROSPECTIVE OPERATION OF STATUTE: FINDING OF JURY. The finding of the jury in investigating whether a transaction is usurious or not, is binding on the court where there is substantial evidence to support it. And where there is evidence that the garnishee charged usurious interest, after the statute concerning usurious mortgages went into effect, on a note executed prior to that time, the question of whether the instructions gave the statute a retrospective operation is not in the case.

8. ————: FORM OF VERDICT: SEPARATE ITEMS: STIPULATION. To obviate the necessity of naming in the verdict each piece of jewelry, which it was charged belonged to the defendant in a garnishment proceeding, counsel on both sides stipulated that it should be sufficient for the jury to designate the goods in the hands of the garnishee as "the diamonds, watches and jewelry described" in a certain note, and the court drew up a form of verdict in accordance with the stipulation, which the jury adopted. *Held,* that, as counsel made no effort to have a separate valuation of each article, they can not complain that that was not done.

9. ————: ————: ————: JUDGMENT. Where the jury found that the garnishees had in their possession goods belonging to defendant in a garnishment, of greater value than the debt, the court properly or-

dered them to turn the goods into court and the sheriff to sell so much thereof as satisfied the money judgment. And when they returned only a part of the goods into court, not enough to pay the debt, it was proper for the court to order the money judgment credited with the amount realized from the sale of these, and to render a general judgment against garnishees for the balance.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,* Judge.

AFFIRMED.

*L. A. Laughlin* for appellants.

(1) A judgment in a garnishment suit is dependant upon the judgment in the principal case. If the latter is void, reversed, or satisfied, the garnishment judgment shares the same fate. France v. Evans, 90 Mo. 74; McCloon v. Beattie, 46 Mo. 391; Smith v. Railroad, 49 Mo. App. 54; Hopkins v. Huff, 67 Mo. App. 394; Rowlett v. Lane, 43 Tex. 274; Mitchell v. Watson, 9 Fla. 160; Withington v. Southworth, 26 Mich. 381; Clough v. Buck, 6 Neb. 343; Hammett v. Morris, 55 Ga. 644. (2) The plea for a discharge of the garnishees should be granted. (3) The court had no jurisdiction over the garnishees because there was no service of the garnishment summons on them which authorized a judgment finding property of the defendant in their possession. Gates v. Tusten, 89 Mo. 22; Haley v. Railroad, 80 Mo. 114; Coleman v. Ins. Co., 74 Mo. App. 675; Dunn v. Railroad, 45 Mo. App. 36; Epstein v. Salorgne, 6 Mo. App. 352. The return was wholly insufficient to bring the *res* into court so as to authorize a judgment against the garnishees. On the face of the return the court acquired no jurisdiction of the *res.* Fletcher v. Wear, 81 Mo. 524; Norvell v. Porter, 62 Mo. 309; Haley v. Railroad, 80 Mo. 112 ; Gates v. Tusten, 89 Mo. 13 ; Keane v. Bartholow, 4 Mo. App. 507; Dunn v. Railroad, 45 Mo. App. 30; Brecht v. Corby, 7 Mo. App. 305; Connor v. Pope, 18 Mo. App. 86.

(4) The judgment against garnishees is void because there is no return of service or attempt to get service on the garnishee, Harkness. Atkins v. Prescott, 10 N. H. 120; Proctor v. Lewis, 50 Mich. 329; Parker v. Danforth, 16 Mass. 299; Warner v. Perkins, 8 Cush. (Mass.) 518. (5) The court erred in admitting the testimony of witness Diamond as to what garnishee Russell said at the time of the taking of his deposition. The paper filed by the notary was not the deposition of Russell because he never assented to it. The paper signed by Russell and which was offered in evidence was his deposition. Mason v. Booth, 34 Mo. 316. The deposition was the best evidence of what the witness said, and presumably contained all he did say, and testimony to contradict it was incompetent. Dry Goods Co. v. McMahan, 61 Mo. App. 506. Where a deposition is lost, the proper practice is to substitute a copy for it, if obtainable, by order of court, as other records are substituted. Gage v. Eddy, 167 Ill. 102; Carter v. Davis, 81 Mo. 668; Finney v. College, 13 Mo. 267. (6) The court erred in refusing the peremptory instruction asked by the garnishees for a verdict in their favor. Plaintiffs can not attack the validity of the collateral note held by garnishees. Webb on Usury, sec. 366; Taylor on Usury, p. 403; Hill v. Taylor, 125 Mo. 342; Yardley v. Indem. Co., 1 Flip. 551; Hollingsworth v. Swickard, 10 Iowa 385; Zellner v. Mobley, 84 Ga. 746, 20 Am. St. 390; Nat. Bk. v. Brigham, 50 Vt. 105; Rubber Co. v. Wilson, 55 Mo. App. 656. This applies to general creditors. Baskins v. Calhoun, 44 Ala. 582; Barbour v. Tompkins, 31 W. Va. 410; McKinney v. Hotel Co., 12 Heisk. (Tenn.) 104. That a garnishing creditor is a stranger and can not attack a pledge for usury, has been expressly held by this court in the case of Griebel v. Imboden, 158 Mo. 642. (7) The verdict of the jury and judgment thereon are irregular and void. Donk Bros. v. Kinealy, 81 Mo. App. 652; R. S. 1899, sec. 3439; Sherman v. Barrett, 1 Rich. L. (S. C.) 457; Bethel v. Linn, 63 Mich. 464; Picket v. Bridges, 10 Hum.

(Tenn.) 171; Noland v. Leech, 10 Ark. 504; Hanf. v. Ford, 37 Ark. 545; Hickman v. Ford, 43 Ark. 208; Haynes v. Crutchfield, 7 Ala. 189; Jones v. Anderson, 76 Ala. 427; Ketchum v. Brennan, 53 Miss. 598; Spratley v. Kitchens, 55 Miss. 578.

*I. J. Ringolsky* for respondents.

(1) A person acquiring a lien more than four months prior to an adjudication of bankruptcy does not lose his lien by a discharge in bankruptcy. Doe v. Childess, 21 Wall. 646; Collier on Bankruptcy, p. 155; Loveland, Bankruptcy, pp. 612, 613; McGarry v. Lewis Coal Co., 93 Mo. 241; In re Peck, Fed. Cas. No. 10886; Stoddard v. Locke, 43 Vt. 574; St. Louis v. Lumber Co., 114 Mo. 87; Pool v. Ragland's Admr., 57 Ala. 419; Carr v. Farrington, 63 N. C. 560. (2) The court has complete jurisdiction over both the garnishees, Harkness and Russell, and of the property found in their possession, for the summons, declaration and return, comply in every particular with the law. R. S. 1899, secs. 388, 3436, 3438. The return of the sheriff is a full compliance with all requirements of the decisions of this State, as to what the "return" must contain. Knecht v. Ins. Co., 90 Pa. St. 121; Coffin Co. v. Rubelman, 15 Mo. App. 280; McGarry v. Coal Co., 93 Mo. 237; Todd v. Railroad, 33 Mo. App. 110; Connor v. Pope, 18 Mo. App. 86; Norvell v. Porter, 62 Mo. 310. If what the officer says in his return is defectively stated, still, if from the record the court can ascertain all that was done by the officer, and that what he did was a fair compliance with the requirements of the law, then the court has jurisdiction over the subject-matter and the officer could be permitted to amend his return so as to state the facts connected with his service, even in the appellate court. R. S. 1899, secs. 672, 673; Muldrow v. Bates, 5 Mo. 214. (3) The judgment against the garnishees is not void because there was no service on garnishee

Harkness. On the contrary, it is valid against both Harkness and Russell. Connor v. Pope, supra; Norvell v. Porter, supra. The officer having attached in the hands of Russell (for he was summoned and garnisheed as a partner and individually) all the property and debts, the court thereby obtained jurisdiction over the subject-matter. It is held to be the declaration to the garnishee that creates the attachment of the property in his hands. Fletcher v. Wear, 81 Mo. 530; Connor v. Pope, supra; Scott and Rule v. McGaurge, 3 Mo. 88; Coffin Co. v. Rubelman, supra. It has been decided in other jurisdictions that a garnishment served on one partner, having firm assets in his possession, is sufficient to bind partnership property. Anderson v. Wauzer, 5 Howell (Miss.) 587; Speak v. Knisen, 17 Tex. 301; Hinkley v. Water Power Co., 9 Minn. 44. (4) The court did not err in admitting witness, Diamond, to testify to what Russell said at the time his deposition was taken in the attachment suit. Wise v. Loring, 59 Mo. App. 269; Bogie v. Nolan, 96 Mo. 85. (5) The court did not err in refusing to give the peremptory instruction asked for by the garnishees directing a verdict in their favor, because the plaintiffs, as attaching creditors, had the legal right to attack the validity of the pledges made to the garnishees, and because there was evidence to sustain the fact that notwithstanding the note for $1,020 was made prior to the passage of the usury law in June, 1891, still, there was evidence from which the jury had the right to find that usury had been exacted on said loan under a new contract made since June 22, 1891. (6) The verdict of the jury was regular and proper, as was also the order made by the court, and the judgment rendered against the garnishees for failure to comply with the order. Cobbey on Replevin, secs. 1063, 1064; Herring v. Corder, 49 Mo. App. 381; Blake v. Powell, 26 Kas. 320. (7) The garnishees, Harkness and Russell, by turning over part of the goods in their possession to the sheriff, as ordered by the court, thereby affirm the validity of the court's order and can not now

complain of the same. They waived all objections to the legality of the order. Falon v. Goodwin, 35 Kas. 125; Babbitt v. Corby, 13 Kas. 612; Pucking v. McMahon, 76 Mo. App. 372; R. S. 1899, sec. 806; Houck v. Swartz, 25 Mo. App. 17; 2 Shinn on Attachments, sec. 702, p. 1145 and 1146; Rolette Co. v. Pierce Co., 80 N. W. 804; School District v. Board of Supervisors, 97 Cal. 438.

GANTT, J.—On June 22, 1894, plaintiffs sued out a writ of attachment against the defendant, E. Hart, in the circuit court of Jackson county. On the succeeding day the sheriff served the following summons and notice of garnishment on Lamon vs. Harkness and D. H. Russell, a member of the firm of Harkness & Russell, and known in the record as Exhibit "A":

In the Circuit Court of Jackson County, at Kansas City, Missouri, October term, 1894.

David Marx, Millard Veit and Sol H. Veit, partners doing business under the firm name and style of Marx, Veit & Co., Plaintiffs.

vs.

E. Hart, doing business under the firm name and style of Hart Jewelry Company, Defendant.

To Lamon V. Harkness and Lamon D. H. Russell, doing business as Harkness & Russell, garnishee:

You are hereby notified that I attach in your hands all debts due by you to the above-named defendant, E. Hart, doing business under the firm name and style of Hart Jewelry Company, together with all personal property, money, rights, credits, bills, notes, drafts, checks or other choses in action of the said defendant in your possession or charge or under your control at the time of the service of this garnishment, or which may come into your possession or charge, or under your control, or be owing by you between that time and the time of filing your answer, or so much thereof as will satisfy the sum of eighteen hundred and seventeen dollars, with interest and cost of suit, and you are hereby summoned to be and appear before the honorable circuit court of Jackson county, at Kansas City, Missouri, on the first day of the next term thereof, it being the eighth day of October,

A. D., 1894, then and there to answer such allegations and inter-rogations as may be exhibited by David Marx et al., the above-named plaintiffs. Given under my hand at office in Kansas City, Missouri, this twenty-third day of June, 1894.

JOHN P. O'NEILL, Sheriff.

On the back of the writ of attachment said sheriff made the following return:

Executed the within writ in Jackson county, Missouri, on the twenty third day of June, 1894, by delivering a copy of the summons of garnishee hereto attached, marked "Exhibit A" and made a part of this return, to Lamon D. H. Russell, of the firm of Harkness & Russell, by declaring to him that I did attach in his hands all debts due by him to the within named defendant, E. Hart.

JOHN P. O'NEILL, Sheriff.

On June 22, 1894, a summons of garnishment was issued by said sheriff, directed to the garnishee, L. D. H. Russell, as follows:

EXHIBIT C.

*Summons of Garnishee.*

In the Circuit Court of Jackson County, at Kansas City, Missouri, October term, 1894.

David Marx, Millard Veit, and Sol Veit, partners, doing busi-ness under the firm name and style of Marx, Veit & Co., Plaintiffs.

vs.

E. Hart, doing business under firm name and style of Hart Jewelry Company, Defendant.

To Lamon D. H. Russell, Garnishee:

You are hereby notified that I attach in your hands all debts due by you to the above-named defendant, E. Hart, doing business under firm name and style of Hart Jewelry Company, together with all personal property, money, rights, credits, bonds, bills, notes, drafts, checks, or other choses in action of the said defendant, in your possession or charge or under your control at the time of the service of the garnishment, or which may come into your possession or charge, or under your control, or be owing by you between that time and the time of filing your answer, or

so much thereof as will satisfy the sum of eighteen hundred and seventeen dollars, with interest and cost of suit; and you are hereby summoned to be and appear before the honorable circuit court of Jackson county, at Kansas City, Missouri, on the first day of the next term thereof, it being the eighth day of October, A. D. 1894, then and there to answer such allegations and interrogatories as may be exhibited by David Marx, Miller Veit and Sol Veit, partners, doing business under the firm name and style of Marx, Veit & Co., the above-named plaintiffs.

Given under my hand at office in Kansas City, Missouri, this twenty-second day of June, 1894.

JOHN P. O'NEILL, Sheriff.

On the back of the writ of attachment said sheriff made the following return:

And further executed this writ in Jackson county, Missouri, on the twenty-third day of June, 1894, by delivering a copy of the summons of garnishee hereto attached, marked "Exhibit C" and made a part of this return, to Lamon D. H. Russell, by declaring to him that I did attach in his hands all debts due by him to the within named defendant, E. Hart.

JOHN P. O'NEILL, Sheriff.

On October 10, 1894, plaintiffs filed interrogatories to the garnishees, as follows:

FIRST. At the time of the garnishment upon you in the above-entitled cause, had you in your possession, or under your control, any goods, wares, merchandise, property or effects, or any bills, notes, accounts, choses in action, belonging to defendant? Have you since had, or have you now, any of the above-described articles in your possession or under your control?

SECOND. At the time of the service of the garnishment upon you in the above-entitled cause, were you indebted in any manner to the above-named defendant? Have you since then become indebted to him, or are you now indebted to him in any sum?

THIRD. At the time of the service of the garnishment upon you in the above-entitled cause, or since then, or did you have and have you now in your possession or under your control, any goods, wares, merchandise, bills, notes or accounts belonging to defendant? If so state fully what the property consisted of and by virtue of what, if any claim, and what manner you control or hold possession of such property.

On October 17, 1894, the garnishees filed their sworn answer to said interrogatories as follows:

. Now comes the said garnishees, and for their answers to the interrogatories propounded to them by the plaintiffs in the above entitled action, say:

In answer to the first interrogatory the garnishees state that at the time of the garnishment upon them, since that time, or now, they did not have in their possession or under their control any goods, wares, merchandise, property or effects, or any bills, notes, accounts, choses in action, in which the defendant had any legal interest.

In answer to the second interrogatory the garnishees state that at the time of the service of the garnishment upon them, since then or now, they were not indebted in any manner to the said defendant.

In answer to the third interrogatory the garnishees state that at the time of the service of the garnishment upon them, since then or now, they did not have in their possession or under their control any goods, wares, merchandise, bills, notes or accounts in which defendant had any legal interest.

Wherefore, the garnishees pray that they may be discharged from all liability by reason of said garnishment, and that they may be allowed a sum sufficient to indemnify them for their time and expenses and reasonable attorney's fees in attending and answering said garnishment.

On November 16, 1895, plaintiffs filed their amended denial of the answer of the garnishees, as follows, omitting caption:

Now come plaintiffs in the above-entitled cause and for their amended denial to the answer of the garnishees, L. V. Harkness and L. D. H. Russell, doing business as Harkness & Russell, denies each and every allegation and statement in said garnishees' answer contained. Plaintiffs, further answering, state that prior to the issuing of the writ of garnishment in the above-entitled cause on said garnishees, they, the garnishees, received into their possession four thousand dollars worth of diamonds, jewelry and merchandise belonging to defendant as security for a large alleged indebtedness due the garnishees from the defendant. Plaintiffs, further replying, state that the garnishees and defendants hereto, prior to the issuing of the attachment herein, entered into a conspiracy for the purpose of defrauding

the creditors of the defendant. That it was agreed and understood by and between the defendant and garnishees that the defendant should purchase goods on credit and thereafter transfer said goods to said garnishees. Plaintiffs further state that the goods now in possession of garnishees were transferred to them by defendant for the purpose of hindering, delaying and defrauding the creditors of defendant, and were accepted by the garnishees for the purpose of assisting the defendant in his purpose to defraud, hinder and delay his creditors.

Plaintiffs further state that the defendant, for the past five years, was wholly insolvent and was purchasing large quantities of goods on credit with the intention never to pay for such goods; all of which was known to the garnishees and participated in by them.

Wherefore plaintiffs state that the garnishees have in their possession four thousand dollars worth of goods belonging to defendant, wherefore, plaintiffs ask for judgment against the garnishees for the amount of their claim with interest and costs.   .

### SECOND COUNT.

Plaintiffs, for a second denial to garnishees' answer herein, state that prior to the issuing of the writ of attachment in the above-entitled cause, the defendant became indebted to the garnishees in a large sum of money, to-wit, ten thousand dollars; that as security for such large indebtedness the defendant transferred to garnishees five thousand dollars' worth of diamonds, jewelry and watches, and defendant secured garnishees with other merchandise, including a large number of pledges upon which defendant had loaned money to the amount of twenty-five hundred dollars. That the garnishees for any and all indebtedness to them, and for the money loaned by them to defendant, charged, exacted and received from the defendant usurious interest, to-wit, the sum of two per cent per month. That said garnishees had in their possession said large amount of goods, wares and merchandise as security for said indebtedness, upon which garnishees charged usurious interest. That the sheriff of Jackson county tried to levy on said goods, but the garnishee concealed the same so that the levy could not be made on them. Wherefore plaintiffs state that the garnishees have no lien on the goods so pledged with them for any indebtedness of the defendant to them on account of having charged said usurious interest, to-wit, two per cent per month; wherefore plaintiffs pray for judgment against the garnishees for the value of said goods and for the amount of their claim against the defendant with interest and costs.

On November 18, 1896, garnishees filed their reply to the denial of plaintiffs, as follows, omitting caption:

"Now come the garnishees, Harkness & Russell, and for reply to the denial of plaintiffs of the answer of these garnishees, deny each and every allegation in said denial contained. Wherefore these garnishees pray to be dismissed with their costs."

The cause came on for trial at the October, 1897, term, of said court. Under the evidence and instructions of the court, the jury returned the following verdict: "We the jury find the issues for the plaintiffs, and we further find that the garnishees Harkness & Russell at the time of the service of the writ of garnishment on them, had in their possession money, or property and effects belonging to defendant Hart as follows, diamonds, watches and jewelry as described in the $1,825 note in evidence, and the value thereof is $3,500. George Price, Foreman."

Motions for new trial and in arrest of judgment were filed December 7, 1897 in due time, and overruled August 8, 1898, and the garnishees duly excepted, and leave was given them to file a bill of exceptions at the next regular term of the court.

Upon the verdict against the garnishees the court rendered judgment as follows, on December 3, 1897:

"Wherefore, it is ordered, adjudged and decreed by the court that unless said garnishees, Harkness & Russell, pay over or deliver to the sheriff said property so found to be in their possession by the aforesaid verdict of the jury, or pay over the value thereof within ten days from this date, or execute their bond for the payment or delivery thereof within said time, then the court will enter up judgment against said garnishees for the proper amount or value as found in money, and award executions to enforce such judgment."

On December 13, 1897, the following order was made by the court: "Now on this day come said garnishees, by their

attorney, and ask the court for an extension of time in which to discharge themselves as per order of this court made on December 3, 1897. Whereupon, the court doth order that the time given said garnishees to comply with the order of this court be extended until on or before January 15, 1898."

On January 15, 1898, the time for compliance was again extended for thirty days. The motion for new trial having been overruled on August 7, 1898, on August 22, 1898, plaintiffs filed their motion for judgment because the garnishees had failed to discharge themselves as ordered by the court and the court having heard the same rendered the following judgment:

"October 8, 1898. Now on this day come plaintiffs, by their attorney, and the garnishees, by their attorney, and the application filed by plaintiffs for a judgment against the garnishees on account of the garnishees failing to discharge themselves as ordered by the court, coming on for hearing, and the court having heard and fully considered the evidence introduced by both plaintiffs and garnishees, does hereby order and adjudge that said motion for judgment against the garnishees be and hereby is sustained; to which ruling and action of the court, the garnishees except, and the court finds that the plaintiffs have judgment against defendant amounting at this time to the sum of $2,244.78, and the costs due the plaintiffs now accrued in said attachment suit in the sum of $26. Wherefore it is ordered and adjudged that plaintiffs have judgment against the garnishees for the sum of $2,244.78 and interest from date, and said sum of $26 costs of said attachment suit, and the costs of this garnishment proceeding. It is further ordered that the goods and property deposited by the garnishees with the sheriff be sold by the said sheriff under the execution issued in this cause aginst defendant, as such goods are directed to be sold by law under executions, and that the amount realized from such sale be credited on the judgment obtained by plaintiffs against the defendant, and

that execution be issued against the garnishees to recover the balance if any due plaintiffs from defendant on their said judgment.

"And come now said garnishees, by attorney, and file herein their motion for a new trial of this cause and motion in arrest of judgment herein, which said motions are now by consent of parties taken up and submitted to the court, and the court being duly advised in the premises doth overrule said motions; to which ruling of the court said garnishees duly excepted at the time. The court grants and allows said garnishees until on or before the fifteenth day of December, A. D. 1898, to prepare and file their bill of exceptions. Said garnishees in due time filed their affidavit for appeal and an appeal was granted."

Since the transcript was filed in this court, a certificate of the discharge of E. Hart in bankruptcy by the district court of the United States for the western district of Missouri, has been filed in this court, and a motion to transfer the cause to the Kansas City Court of Appeals.

I.   No doubt can exist that if jurisdiction of this appeal is to be determined by the amount involved then it should have been lodged in the Kansas City Court of Appeals, but the garnishees in their motion for new trial insisted that the circuit court, in giving plaintiff's instructions numbered 1 and 2, and in refusing their instruction numbered 1, violated section 15 of article 2 of the Constitution of Missouri, and thus raised a constitutional question which gave this court jurisdiction of the appeal.

The relevancy of the constitutional provision prohibiting the passage of *ex post facto* laws arose in this way.   On August 13, 1889, E. Hart gave his note for $1,020, payable to Fred J. Kast, bearing interest at ten per cent per annum, which note was indorsed to the garnishees. In 1891, the General Assembly passed a new interest and usury law (Laws 1891, p. 170) whereby mortgages or pledges of personal prop-

erty were rendered invalid and illegal when it should appear that the party holding such lien "has received or exacted usurious interest." In 1894, Hart mortgaged or pledged certain jewelry and personal property to garnishees to secure them this note for $1,020, and all other indebtedness.

On the trial, plaintiffs, the attaching creditors, contended that there was evidence that the garnishees exacted and received usurious interest on this $1,020 and took a new agreement to pay usury thereon subsequent to the Act of 1891, and garnishees insisted there was no evidence that they exacted or received usurious interest on this note and whatever effect that act might have on the other note secured by the mortgage it did not render the note of 1889 usurious and prayed the court to instruct in effect, that there was no evidence of payment of usurious interest on such note but the court declined to do so.

Whatever our conclusion may be on a full investigation of the record, we think the constitutional question was fairly raised, and, hence, we must deny the motion to transfer to the Kansas City Court of Appeals.

II. The transcript was filed in this court February 7, 1899. Subsequently, on February 11, 1899, Hart, the defendant in the attachment, was adjudged a bankrupt, and on October 30, 1899, was discharged from all debts and claims which existed and were provable against his estate on February 11, 1899. Afterwards, on January 4, 1900, the garnishees herein filed the certificate of said discharge in this court and moved this court to discharge the garnishees, the appellants herein, because by operation of law the judgment against Hart was discharged, and as this garnishment is an auxiliary proceeding to enforce that judgment, it is likewise discharged.

That it is a proper practice to file a plea of discharge in bankruptcy in this court, when the same is granted after the appeal is perfected, was decided in Haggerty v. Morrison, 59 Mo. 324, and the bankrupt may avail himself of it in this way.

But the question whether the garnishees against whom a judgment had been rendered prior to the adjudication of the defendant's bankruptcy can invoke the protection of that discharge, is another proposition.   Section 16 of the Act of July 1, 1898, establishing a uniform system of bankruptcy in the United States, expressly provides that "the liability of a person who is a co-debtor with, or guarantor, or in any manner a surety for, a bankrupt, shall not be altered by the discharge of such bankrupt."

A similar provision was incorporated in the Bankrupt Act of 1867, section 33 (R. S. U. S. 1878, sec. 5118), and in Hill v. Harding, 130 U. S. 699, it was held that if an attachment of property in an action in a State court is dissolved by the defendant's entering into a recognizance with sureties to pay the amount of the judgment that may be obtained, and the defendant after verdict against him obtains his discharge in bankruptcy upon proceedings commenced more than four months after the attachment, the bankrupt act does not prevent the State court from rendering judgment against him on the verdict with a perpetual stay of execution, so as to leave the plaintiff at liberty to proceed against the sureties.   "If the bond was executed before the commencement of proceedings in bankruptcy, the discharge of the bankrupt protects him from liability to the obligees, so that, in an action on the bond against him and his sureties, the judgment recovered must be accompanied with a perpetual stay of execution against him, but his discharge does not prevent the judgment from being rendered generally against them."

Now the garnishees here are neither co-debtors nor guarantors, nor in any manner sureties for the bankrupt defendant.   They were simply mortgagees or pledgees of certain personal property of his to secure debts due them by him. We must look elsewhere to determine their liability or their right to be discharged by reason of his discharge.

Plaintiffs began their action by attachment June 22, 1894.

The garnishees were summoned June 23, 1894. On January 28, 1895, the attachment against defendant was sustained, and final judgment rendered against him. Garnishees filed their answer October 17, 1894, denying they had any property in their possession belonging to defendant. On December 3, 1897, plaintiffs recovered judgment against them, and the jury by their verdict found they had goods of the value of $3,500 belonging to defendant in their possession and they were ordered to turn the said property into court.

They turned over a part and the sheriff was directed to sell that, and as the court found they had failed to turn over all, it rendered a general judgment against them with an order to credit the amount the goods turned over should sell for and collect the balance of garnishees. From this final judgment they appealed and gave a supersedeas bond.

The reason advanced by the garnishees for their motion for a discharge is based upon the proposition that a judgment in garnishment is dependent upon the judgment in the principal case. If the latter is void, reversed or satisfied, the garnishment judgment shares the same fate.

The two cases cited from this court (France v. Evans, 90 Mo. 74, and McCloon v. Beattie, 46 Mo. 391) decide that when no jurisdiction is obtained over the defendant, the garnishee may plead such a want of jurisdiction for his own protection although he may be indifferent between the parties, and to this statement of the law we can see no objection, as the garnishee is entitled to be protected against a subsequent demand by the defendant. To the same effect is Hopkins v. Huff, 67 Mo. App. 394.

In Smith v. Railroad, 49 Mo. App. 54, it was held that where the judgment sustaining an attachment was reversed, a judgment against a garnishee under those proceedings must likewise be reversed.

And to the same effect are Rowlett v. Lane, 43 Tex. 274, and Withington v. Southworth, 26 Mich. 381. And so it has

been held under statutes which make the judgment against a garnishee dependent upon sustaining the attachment or where the garnishee is summoned after judgment and it is subsequently reversed. [Mitchell v. Watson, 9 Fla. 160; Clough v. Buck, 6 Neb. 343.]

But here we have a final judgment unappealed. No want of jurisdiction over either defendant or garnishees and no satisfaction of the judgment, but simply a discharge of the defendant in bankruptcy after a final judgment against the garnishees. The affirmance of this judgment will not increase or diminish the assets of the bankrupt, so that the only question is, does the bankrupt act discharge the lien of this judgment under these circumstances?

We have seen that the discharge of the principal in bankruptcy does not discharge his sureties in the bond to dissolve the attachment but the debt remains as to the sureties though extinguished as to the principal. It is obviously not satisfied in the meaning of the cases cited, nor has the process become *functus officio* as to them.

We think the question must be solved upon the principle that where the jurisdiction of a court and the right of a plaintiff to prosecute his suit have once attached, that right can not be arrested and taken away by proceedings in any other court.

It is abundantly established by the courts of last resort in this country, Federal and State, that when the jurisdiction of a State court to enforce mechanics' liens has attached, that jurisdiction will not be divested by proceedings in bankruptcy instituted subsequently thereto. [Seibel v. Simeon, 62 Mo. 255, and cases cited.]

In this case, the jurisdiction of the circuit court of Jackson county had fully attached and ripened into a general judgment against the garnishees herein, which judgment, under our statutes, was a lien upon the real estate of the garnishees and fixed their liability for the value of the goods of defendant attached in their hands long prior to the adjudication and

discharge in bankruptcy, and they had given their appeal bond to stay that judgment.

In our opinion the subsequent proceedings in bankruptcy did not divest the jurisdiction of the circuit court to enforce the rights which had accrued to plaintiff by these garnishment proceedings. [Gluck & Becker on Receivers, sec. 30, p. 66; Heidretter v. Oil Cloth Co., 112 U. S. 294.]

While it is objected for the first time in the motion in arrest that the court did not obtain jurisdiction over the garnishees and the subject-matter of the action, we think the point is not well taken. It is true, that when goods and chattels belonging to the defendant are to be attached, the officer shall take them into his possession if accessible, and if not accessible he shall declare to the person in possession thereof that he attaches the same in his hands and summon such person as garnishee (sub. div. 4, sec. 388, R. S. 1899), but we think the return of the officer in this case was substantially what the statute requires. He returns that he delivered a copy of the summons of garnishment, marked "Exhibit A" in Jackson county, Missouri, on June 23, 1894, to Lamon D. H. Russell, which copy he makes a part of his return. In that written notice he notified, i. e., "declared to" said garnishee that *he attached in their hands all debts due by them* to the defendant, E. Hart, together with all personal property, money, etc. The mere fact that he did not repeat the formula again in his return, but made it a part of his return, does not vitiate it in the least. The return is not open to the criticism made in the various cases cited from this State. There is nothing in the statute which makes a written declaration of less efficacy than an oral declaration. The effect of the written notice, by our statute, was to attach all the personal property, etc., of the defendant in the garnishees' possession. [Sec. 3436, Revised Statutes 1899.] By that service of the writ of attachment, the plaintiffs, while not obtaining a full and clear lien upon the specific property in their hands, as against third persons, did, obtain

such a lien as against garnishees and gave plaintiff the right to hold the garnishees personally liable for its value.    [Drake on Attachment (4 Ed.), sec. 453; McGarry v. Coal Co., 93 Mo. l. c. 241; Johnson v. Foster, 65 S. W. 105.]

And as already said, this lien was not divested by the subsequent proceeding adjudging Hart a bankrupt or his discharge. [Bankrupt Act July 1, 1898, 30 U. S. Stats. at Large, ch. 7, sec. 67, par. c.]

It follows that the motion to discharge the garnishees, because of the bankruptcy of Hart, must be denied.

III.    There is no merit in the point that Harkness was not served.    His partner, who had all the property in his possession, was served, and Harkness voluntarily entered his appearance, and throughout the proceedings made common cause with his co-partner, who had been served but was absent in Europe all the time and could not be served.    By the service of the notice of garnishment upon the partner who had the possession of the goods within the jurisdiction of the court, the court obtained jurisdiction of the *res*, and it was entirely competent for Harkness to waive the summons and give jurisdiction over himself personally.    [Fletcher v. Wear, 81 Mo. l. c. 530; Scott & Rule v. Hill & McGunnegle, 3 Mo. 88; St. Louis Coffin Co. v. Rubelman, 15 Mo. App. 280.]

IV.    It is assigned as error that the court erred in admitting the testimony of Diamond, as to certain statements of Russell, one of the garnishees, as to the rate of interest which his firm charged Hart on the loans secured by the pledge or chattel mortgage, under which they claimed the personal property, which plaintiffs seek to subject to their debt against Hart by the garnishment proceeding.

It appears that in the original attachment suit against Hart, notice was given by plaintiffs to take depositions and Russell was summoned and testified before Diamond who was the notary.    By agreement, the testimony was taken in shorthand and when written out was handed to Russell to sign. He

took it and made many interlineations and then had his own stenographer copy it and then signed it. Diamond refused to certify it in this shape, but made a longhand copy of his stenographic notes and filed that as the deposition. This last paper was lost without fault of plaintiffs, and on the trial they proved the loss and then offered proof of a declaration by Russell at the time of the taking of the depositions that Russell said they charged Hart two per cent a month on all loans made by their firm to him. To this garnishees objected because they insisted that the deposition filed by Russell after he had corrected it contained his statement on that subject and could not be contradicted by Diamond. The offer was to prove an admission by an adverse party to the suit and we think it was competent and no error was committed in admitting it. [Bogie v. Nolan, 96 Mo. l. c. 90, 91.]

V. Again, error is predicated on the refusal of the peremptory instruction asked by garnishees, for a verdict in their favor.

Two propositions are advanced to support this assignment: first, that plaintiffs could not attack the validity of the collateral note held by the garnishees, for usury; second, by refusing this instruction this court gave a retroactive effect to the usury law of 1891, in violation of section 15 of the Bill of Rights of 1875.

The first of these contentions is based upon the assumption that an attaching creditor, proceeding by garnishment, is a stranger, and can not attack a pledge for usury, or at best is only a general creditor and as such can not invoke section 3710, Revised Statutes 1899. That section is in these words: "In actions for the enforcement of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or secure possession of property so pledged or mortgaged, or in any other case when the validity of such lien is drawn in question, proof upon trial that the party holding or claiming to hold any such lien has received or exacted usurious interest

for such indebtedness shall render any mortgage or pledge of personal property, or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal." The usury does not extinguish the debt but the statute destroys the lien or mortgage given to secure it. [Adler Clothing Co. v. Corl, 155 Mo. 149.]

In American Rubber Co. v. Wilson, 55 Mo. App. 656, it was first ruled that an attaching creditor stood in such privity with the mortgagor, in a mortgage to secure an indebtedness tainted with usury, that he could attack the same for usury. That ruling was approved and adopted by this court in Coleman v. Cole, 158 Mo. 253, in which it was said, "The plea of usury is a privilege personal to the debtor or his privies in blood, contract or representation, and an attaching creditor of the mortgagor is a privy in representation with the mortgagor and hence can interpose the defense."

With these decisions confronting them, garnishees concede that when the sheriff actually takes the mortgage property into his possession by seizing it under the writ, the creditor may avail himself of the usury to defeat the mortgage, but he contends that an attaching creditor who attaches the property in the hands of the usurious mortgagee or pledgee stands in the position of a mere stranger or at most a general creditor, and has no such right. The distinction is not sound. When the sheriff served the notice of garnishment on garnishees that he attached in their hands all property belonging to defendant, the process of enforcing the attachment against the mortgaged property was begun and plaintiffs stood as to the garnishees lienors on that property, albeit it was not a lien upon specific property, but still such a lien as gave them a right to hold garnishees personally liable for it or its value (McGarry v. Coal Co., 93 Mo. l. c. 241); and no sound reason can be given why an attaching creditor who has fastened his attachment upon property in the hands of an usurious pledgee or mortgagee by a proper service of garnishment, and declaring to him that he

attached in his hands the property of defendant, should not have the same right to attack a mortgage for usury as one who succeeded in having the sheriff actually seize it. We can not assent to the proposition that such an attaching creditor is no more than a stranger to such usurious mortgage or is only a general creditor. He has rights superior to either and we think falls within the protection of the statute.

Did the court give the statute a retroactive effect? This insistence is bottomed upon the claim of counsel that there was no evidence that any usurious interest was paid on the $1,020 note made by Hart and wife to Fred Kast and by him indorsed to garnishees, after January 1, 1890. The usury act took effect June 22, 1891. They argue, therefore, that, conceding usurious interest was paid on this $1,020 before the Usury Act of 1891, went into effect but not afterwards, said act can not apply to mortgages or pledges made after its passage to secure notes upon which usurious interest has been paid previous to its enactment.

Their further contention along this line is that as by the terms of the $1,825 note it is applicable "to any other note or claim held by the said Harkness & Russell" the collateral described in the $1,825 note was pledged to secure the $1,020 note held by them, and although all the other notes held· by garnishees on Hart were tainted with usury, as the evidence amply established, still the pledge would be good as to the $1,020 note, and therefore the collateral was incumbered with a trust, and not subject to garnishment.

That the circuit court did not intend to give a retrospective effect to the usury act is plainly deducible from its instructions, for in both plaintiff's instruction numbered 1 and garnishees' fourth instruction the court required the jury to find that the garnishees received or exacted usurious interest on the $1,020 note after June 22, 1891, the date when the usury law went into operation. It is evident that if a construction was put upon the Act of 1891 as would give it a retroactive

effect, it grew out of the mistake of the court that there was evidence that the garnishees had exacted or received usurious interest after the law went into effect when in fact none was exacted or paid. It will be observed that garnishees submitted to the jury, in their fourth instruction, whether usurious interest was exacted or received after June 22, 1891. [Water Co. v. Neosho, 136 Mo. l. c. 507.]

While Russell testified at one time that he had not received any usurious interest on the $1,020 note, he admitted that "he probably did; that Hart said he did, and that he afterwards corrected it *or attempted to correct it,*" and Diamond testified that he said he charged Hart two per cent per month on *all* his indebtedness, which included this particular note. Again, he says the $1,825 note was made up of interest and charges for services, etc.

The jury were the triers of the fact. They were not bound to accept Russell's testimony as true, or to reject Diamond's evidence as false. They heard Russell's effort to explain the entries in his books, made in his own handwriting, and directed as they were to find usury only if they found garnishees had exacted it after June 22, 1891, their verdict must be held to have found they did exact or receive it after June 22, 1891, and if so, then there was no retroactive effect given to the statute.

Their finding is conclusive on this point in an action at law where there was substantial evidence on which to base it. Particularly is this true in investigating whether a transaction is usurious or not.

As said in Kreibohm v. Yancy, 154 Mo. 86: "The real inquiry in every case is, whether there has been a borrowing and lending at a greater rate of interest than the law allows; and this becomes purely a question of fact to be determined by all the circumstances of the particular case. . . . . . The courts will follow them through all their shifts and devices, and ascertain the true character and design of the transaction."

The testimony of Russell lacked that candor and consistency which tends to convince a jury of its credibility.

VI.   Objection is made to the form of the verdict and judgment, because each item of the jewelry was not separately valued.   To obviate the necessity of naming each piece of jewelry in the verdict, counsel on both sides stipulated that it should be sufficient for the jury to designate the goods in the hands of the garnishees as "the diamonds, watches, and jewelry described in the $1,825 note in evidence."

Accordingly the court gave the eighth instruction for plaintiffs as follows:

"The court instructs the jury that in this case you have nothing to do with the amount of indebtedness of Hart to plaintiffs, and if you find a verdict for the plaintiffs and against the garnishees, Harkness & Russell, your verdict may be in the following form:

"We, the jury, find the issues for the plaintiffs, and we further find that the garnishees, Harkness & Russell, at the time of the service of the writ of garnishment on them, had in their possession money or property and effects belonging to defendant, Hart, as follows: diamonds, watches and jewelry as described in the $1,825 note in evidence, and the value thereof is $————.

"And if you find for the garnishees, Harkness & Russell, your verdict may be in the following form:   'We, the jury, find the issues in favor of the garnishees, Harkness & Russell.' "

At the request of garnishees the court gave the following instruction:

"3.   The court instructs the jury that the plaintiff can not recover in this action, if at all, except for the market value of the goods pledged as collateral to secure the note for $1,825, dated June 1, 1894, introduced in evidence, as such market value was on June 23, 1894, at the time of the service of this garnishment."

Counsel at no time asked for a separate valuation of each article and the jury returned a verdict for plaintiffs in the form given them by the court and valued the whole at $3,500. The court ordered all of the said goods and jewelry to be turned into court.

Garnishees turned in a part, but failed to turn over the balance, and thereupon the court entered judgment as provided in section 3452, Revised Statutes 1899, against the garnishees for the amount of the judgment against defendant, and directed a sale of the goods turned over to the sheriff, and that the proceeds be credited on the execution and the balance if any collected out of the garnishees.

We see no objection to the verdict, especially since garnishees made no effort to have a separate valuation of each article. This is a civil case and it was incumbent on the garnishees to have the separate valuation if they desired it. As the jury had found these goods were the property of defendant and subject to the attachment, two courses were open, the garnishees could have turned over all the goods described in the verdict and discharged themselves, or the court could enforce its order as it did, to which we see no objection and certainly nothing of which the garnishees can complain. After a full investigation we find no reversible error, and the judgment is affirmed.

*Sherwood, P. J.,* and *Burgess, J.,* concur.