JAMES PRITCHETT v. DAVID H. MITCHELL, *et al.*

1. USURY; *Plea of, a Personal Privilege.* The plea of usury is a personal privilege, and if the debtor declines to avail himself of it, no stranger to the transaction can.

2. ———— *Second Mortgagee.* A second mortgagee cannot plead usury in a prior mortgage, either to defeat or postpone its lien.

*Error from Jefferson District Court.*

IN October 1870, Joseph D. Rollins made and delivered to *Mitchell* his promissory note for $2,500, with interest at 12 per cent. from date, payable in six months from the date thereof, and Rollins and wife executed a mortgage on real estate

to secure the same. Payments upon said note were made to the amount of $1,620 prior to August 1873. In June 1873, said Rollins and wife executed and delivered to *Pritchett* their note for the sum of $3,100, with interest, and their mortgage to secure the payment of the same; and in August 1873, said Rollins made and delivered to *Pritchett*, his note of that date for the sum of $400, with interest, and jointly with Mary E., his wife, gave a mortgage to secure the same. Said three mortgages were respectively duly recorded, and covered the same real property. In August 1873, and after the first mortgage from Rollins to *Pritchett* had been duly recorded, *Mitchell* brought an action to foreclose his mortgage, making Rollins and wife sole defendants therein, and on the trial thereof, no defense being made, the court gave judgment in favor of *Mitchell*, in November 1873, for $1,526.50; together with the additional sum of $126 as attorney-fees for foreclosure, and thereupon decreed a sale of the property, and application of the proceeds in satisfaction thereof, to all which proceedings *Pritchett* was a stranger. In December 1874, *Pritchett* brought his action to foreclose the two mortgages given to him, in which action *Mitchell* was joined with Rollins and wife as co-defendant. *Mitchell* answered, setting up the former judgment, together with the note and mortgage upon which it was based. *Pritchett* replied, alleging usury in the *Mitchell* note and judgment to the amount of $646.50. Rollins and wife made default. Trial at the February Term 1875 of said district court. *Pritchett* offered evidence to show — *first*, that said Joseph D. Rollins and Mary E. Rollins were insolvent at the time said action was commenced, and ever since; *second*, that the mortgaged premises were insufficient to pay both the claim of said *Mitchell* and of *Pritchett;* and *third*, that payments were made by said Rollins to *Mitchell*, on the Mitchell note and mortgage, by way of usurious interest and inducement to contract for more than twelve per cent. per annum. *Mitchell* objected, and the evidence was rejected. Judgment was rendered, that the entire amount of the former judgment in favor of *Mitchell*, be a

first lien on said mortgaged premises, to which *Pritchett* excepted, and he now brings the case here on error.

*Nevison & Alford*, for plaintiff, contended, that, under §§ 3 and 4 of ch. 51, Gen. Stat. 1868, whenever it shall be made to appear to the court by any party in interest that a contract sought to be enforced is tainted with usury, the court is bound to render judgment accordingly — citing *Cole v. Bausemer*, 26 Ind. 94; 39 Penn. St. 361; 14 Ohio St. 200. A party having a subsequent lien upon property may protect his interest to the extent of making the entire usurious interest an inferior lien upon the property, and this regardless of the question as to whether the mortgagor is insolvent or the property insufficient to pay both debts. 2 Alb. Law Jour. 100; 8 Paige, 640; 1 Md. Ch. 127; 10 Wis. 333; 40 N. Y. 476; Ord on Usury, 331. Second — a junior mortgagee is not affected by a suit foreclosing a senior mortgage to which he was not a party. 31 N. Y. 218; 23 Cal. 106; 52 Ill. 84; 34 Md. 164; 2 Washb. on Real Prop. 229; 12 Kas. 139.

*John W. Day*, for defendant in error, submitted, that Pritchett was barred by the prior judgment in favor of Mitchell, from inquiring into the same; and second, that plaintiff was not entitled to show usury in the Mitchell note and mortgage, even if he had been a party to the foreclosure action in which such judgment was rendered. The only person other than Rollins, who could interpose a plea of usury against that note, was Mrs. Rollins, and she could do so only because and when the land mortgaged, or some part of it, under our statutes, was her homestead. *Clark v. Spencer*, 14 Kas. 398, 407; *Lyon v. Welsh*, 20 Iowa, 578.

The opinion of the court was delivered by

BREWER, J.: Can a second mortgagee plead usury in a prior mortgage? Can he do it either to defeat, or postpone, the lien of such prior mortgage? Authorities are well divided on this question. That he can, is affirmed in Indiana,

Pennsylvania, Ohio, New York, Maryland, and New Jersey. *Cole v. Bausemer*, 26 Ind. 94; *Green v. Tyler & Co.*, 39 Penn. St. 361; (though under the present statute the opposite ruling seems to obtain; *Miners Trust Co. v. Roseberry*, 2 Law & Eq. Rep. 478;) *Union Bank v. Bell*, 14 Ohio St. 200; *Brooks v. Avery*, 4 Comstock, 225; *Post v. Dart*, 8 Paige, 640; *Banks v. McClellan*, 24 Md. 62; *Cunnins v. Wire*, 6 N. J. Eq. 73. That he cannot, is affirmed in Alabama, Connecticut, Illinois, Iowa, Kentucky, Michigan, Missouri, and Vermont. *Cain v. Gimon*, 36 Ala. 168; *Fielder v. Varner*, 45 Ala. 429; *Loomis v. Eaton*, 32 Conn. 550; *Adams v. Robertson*, 37 Ill. 45; *Powell v. Hunt*, 11 Iowa, 430; *Huston v. Stringham*, 21 Iowa, 36; *Carmichael v. Bodfish*, 32 Iowa, 418; *Campbell v. Johnston*, 4 Dana (Ky.) 177; *F. & M. Bank v. Kimmel*, 1 Mich. 84; *Ransom v. Hays*, 39 Mo. 445; *Austin v. Crittenden*, 33 Vt. 553. These last two cases were not mortgage cases, but the decisions plainly indicate the judgments of the courts upon the question. See also, 3 Parsons on Cont. 122; *Ladd v. Wiggin*, 35 N. H. 421; *De Wolf v. Johnson*, 10 Wheat. 367; *Green v. Kemp*, 13 Mass. 515. We incline to the latter view, and to regard the plea of usury as a personal privilege. When the parties to a contract are willing to abide by its terms, why should one, not a party thereto, be permitted to interfere? If the debts were unsecured, no one would think that the second creditor had any right to interfere. The payor, by payment of the first note according to its terms, and without insisting on any plea of usury, might so diminish his means as to render himself unable to pay the second note, but still that would not give the holder of the second the right to restrain such payment. And the rule would be the same if the securities for the two notes were separate and distinct. Why then should the mere giving of a single security for the two notes enable the holder of the second to interfere? And a mortgage with us, it will be borne in mind, conveys no estate in the land, but is simply a security for the debt. *Chick v. Willetts*, 2 Kas. 384. The second mortgagee, it is true, could increase the value of his

security by diminishing the amount of the first lien; but he does so only by preventing parties who have made a contract, and are willing to abide by its terms, from complying with that contract. When the first mortgage was given, the land-owner had a perfect right to give it. The land stood charged with the lien as he placed it, and no one but he could question the validity of the lien for the entire amount. He still remains willing to abide by the terms of that contract, willing that the land should be held for the face of the note. The taking of the second mortgage was a voluntary matter. The mortgagee finds the property charged with a mortgage, pledged therefor as security for a specified amount, finds that the mortgagor intends that it shall be used in discharging that amount of indebtedness, and voluntarily takes the property thus burdened, as security for his own debt. It is with ill grace that he thereafter endeavors to prevent the mortgagor from complying with his first contract. Yet, even those who are loath to break their own promises, are often willing that others shall, if thereby their own interests are promoted. Surely, a man ought to have a right to say whether he shall keep his own promise or not. In the enactment of laws, usury laws as well as others, the legislature has regard to the general interests, the welfare of the majority. Its laws therefore often bear hardly in individual instances. And while it may be generally true, that a limit to the amount to be paid for the use of money should be fixed, yet every one knows that sometimes such amount is not what in justice and fairness ought to be paid. Men feel honorably bound to pay more than the law authorizes. While the law ought to protect the party from the clamps of the usurer, by permitting him to repudiate all but the legal interest, yet, if the borrower feels in honor bound by the peculiar circumstances of his loan to pay the stipulated interest, it would seem as though no stranger to the transaction should be permitted to interfere.

The judgment will be affirmed.

All the Justices concurring.