BOLEMAN, Respondent, vs. CITIZENS' LOAN & BUILDING AS-
SOCIATION, Appellant.

*April 2—April 22, 1902.*

*Building and loan associations: Loans, to whom made: Estoppel:
    Effect of default in payment: Variance between contract and
    statute: Bidding for loans: Fixed premiums: Management by
    directors: Usury, who may plead: Quitclaim purchaser.*

1. Where a building and loan association has no right to loan
   money except to members, an application for a loan by a non-
   member, the making of the loan, and the issue of a certificate
   of stock to him, must be considered as parts of one transac-
   tion, making him a member, and neither he nor an assignee
   of the stock can be heard to question the regularity of the
   transaction.

2. Although sec. 2011, S. & B. Ann. Stats., provided that in case of
   default for *six months* in payments on a loan from a building
   and loan association the whole amount might be collected, a
   provision in the bond given by a borrower, that upon default
   in payments for *three months* the whole principal should be-
   come due, did not affect the essence of the loan and is imma-
   terial in an action to redeem from the mortgage, where there
   is no attempt to enforce such provision.   [Whether the parties

might legally contract for a period different from that named in the statute, not determined.]

3. Under sec. 2011, S. & B. Ann. Stats. (providing that the by-laws of every building and loan association should fix the time of holding periodical meetings at which the money in the treasury should be offered for loan in open meeting, and that the stockholder who should bid the highest premium for a loan should be entitled thereto, etc.), the meetings at which such money should be offered might be open meetings of the board of directors where any or all stockholders might be present, and the by-laws might authorize bids to be made in writing, filed with the secretary, by stockholders not present at the meeting.

4. Where no fixed rate of premium had been adopted by the directors of a building and loan association, the facts that a great majority of loans were made at a certain rate of premium, and that the secretary had advised applicants that such rate would probably mature their shares in a given time, do not show that an arbitrary standard of rates had been fixed.

5. The evidence in this case (showing among other things that the business of loaning the moneys of a building and loan association was conducted, not by the members generally, but by the board of fifteen directors; that there were two classes of members,—borrowers and nonborrowers; and that the power of management was in the board of directors) is *held* not to sustain a finding of the trial court that the plan of the association was merely to loan money at high rates under that guise in order to evade the law and avoid the penalties of usury.

6. Dues on his stock, paid monthly by a borrower from a building and loan association, do not reduce the principal of the loan so as to render interest paid upon the whole amount usurious, where by the contract such dues are not to be applied on the loan until the stock reaches its par value.

7. Under sec. 2013, S. & B. Ann. Stats., if the interest reserved by the contract was within the legal rate, the fact that the interest and premium payments together exceeded that rate did not make the transaction usurious.

[8. Whether, under a usury statute which only prevents recovery of interest when the proper defense is made, and requires the person setting up such defense to prove a tender of the principal sum, a mere quitclaim purchaser of premises mortgaged to secure the usurious contract may urge the defense of usury when the mortgagor has waived that right by not urging it, not determined. *Ludington v. Harris*, 21 Wis. 239, distinguished.]

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

The defendant is a building and loan association organized under the laws of this state. In March, 1894, one Zach Bullman was the owner of a house and lot in the city of Eau Claire, upon which he desired to obtain a loan of $500. He applied to defendant's secretary for such loan, and after some conversation signed a written application, setting out a description of the property, and which authorized the secretary to make a bid of fifty-two cents per share for precedence in securing a loan. This application was submitted to a meeting of defendant's board of directors held March 6, 1894, and his bid for a loan, being the highest, was accepted. On March 9th, he executed a bond and mortgage to the defendant, and the latter part of that month the money was paid over, less certain fees for membership and examination of title, together with a certificate of five shares of stock in the defendant association. The bond required him to pay the sum of $7.50 on the first Tuesday of each month, commencing in April, 1894, and to continue such payments until the amount of dues and the dividends credited on his stock should equal the amount of his loan. The amount paid each month was to be applied as follows: (1) To the payment of fines and assessments; (2) to the payment of the premium for precedence, amounting to $2.60 per month; (3) to the payment of interest on his loan, amounting to $2.60 per month; (4) the balance of said payments was to be credited as due on his stock. The bond also provided that, upon default in payments for three months, the whole principal should become due, and might be enforced by foreclosure proceedings. A similar provision was contained in the mortgage. Bullman made one payment in April, and no more. On April 20, 1895, he executed a quitclaim deed of the mortgaged property to plaintiff, *Carrie Belle Boleman,* his sister, and assigned to her his certificate of stock in the defendant association. Prior

to this time, plaintiff had made several payments to the association. Thereafter plaintiff continued payments at irregular intervals until September 6, 1900, the total payments being $500. In March, 1900, plaintiff offered to surrender her stock and pay defendant $226.13 for a release of the mortgage, which was refused. In October, 1900, she commenced this action for an accounting, and to be allowed to redeem the mortgaged premises upon the payment of any balance due defendant. In her complaint she set out the facts aforesaid, and alleged that defendant, by resolution, had adopted a fixed sum of fifty-two cents per share that each borrower should pay for precedence in securing a loan, and that it had also determined that there should be no competitive bids in open meetings for loans, and that the loan in question had been made to one not a member and upon the basis stated.

The answer admitted many of the formal allegations of the complaint; set out the payments made, the amount due, and an offer to satisfy the mortgage upon payment of the balance due. It also alleged that plaintiff agreed to assume the mortgage when she purchased from her brother.

The court found the facts as above narrated in regard to the application for a loan, the execution of the bond and mortgage, the issue of the stock, and the payments made. He also found that plaintiff did not assume or agree to pay the mortgage debt; that defendant never made any claim for fines prior to suit; and that its by-laws had only been adopted by the board of directors, and not by the stockholders. Zach Bullman was not given an opportunity to bid for precedence for a loan at an open meeting of members of the association, but the practice was to receive no bids except such as were in writing and submitted through the secretary, and such bids were acted on by the board of directors, and not by the stockholders. Finding 19 was as follows:

"(19) From the date of its organization to the time subsequent to the making of this loan to Zach Bullman the de-

fendant followed a carefully prepared plan of operations, of which the following were features, to wit: To take the control of its entire loaning business out of the hands of the members generally, and transfer it to a board of directors; to create two distinct classes of members, whose interests should be antagonistic, namely, a lending class and a borrowing class; to put all real power into the hands of a board of directors; to make loans of the funds of the lending or investing class for the most part to persons who should not be at the time of making bids for precedence members, and who could not be expected, from the complicated character of the defendant's organization and plan of doing business, to understand, and who should not understand, the contracts for loans which they were making; and to evade the statutory requirements for competitive bidding in open meetings of the members by subscribing therefor in actual practice such a written bid as was made by Zach Bullman to be submitted through the secretary, as said Zach Bullman's bid was submitted, to the board of directors, to the end and for the purpose of exacting from the said borrowing class, for the use of the defendant, and for the benefit of said lending class, a higher rate of interest than that of ten per cent. per annum; and that it was part of the said plan of said defendant, and of its board of directors, to avoid generally a real compliance with said statute of Wisconsin under which it was organized, and to evade the essential requirements of said statutes, and the whole spirit thereof, and to use the same as a cover for exacting usurious rates of interest from such persons as should obtain loans from said association, and that it made the said contract with Zach Bullman in pursuance of said general plan and for the said purposes."

The court's conclusions of law were: (1) The contract between Zach Bullman and defendant was unlawful and usurious, because his bid for precedence was made when he was not a member, and the contract required him to pay more than ten per cent. interest. (2) Because no opportunity was given Bullman to bid in an open meeting of the association. (3) Because defendant's plan of conducting its business was to evade the law and to secure a greater rate of interest than

the statute provided. (4) Because the contract permitted defendant to foreclose in case of a default of three months, instead of six, as provided by the statute. (5) "The contract between the said Zach Bullman and the defendant was unlawful and usurious, without regard to any of the grounds upon which it has heretofore been by me found to be usurious, for the reason that the statute under which the defendant was organized does not permit it to charge a rate of interest as interest on the debt itself exceeding ten per cent. per annum, while by this contract it is expressly stipulated that the mortgagor shall pay, as interest, the sum of fifty-two cents per share per month from the date of making the contract until the entire indebtedness is extinguished. The rate of interest so charged amounts to 6 24-100 per cent. per annum on the original debt, but as it is contemplated by the contract that the principal sum shall be diminished at the rate of $2.30 per month until it is all paid, the average amount upon which Zach Bullman was to pay interest was only $250, and the agreement to pay $2.60 a month, or $31.20 a year, was an express agreement to pay interest at the rate of 12 48-100 per cent. per annum."

The judgment directed a satisfaction of the mortgage, and that defendant pay the costs of the action. It contained no provision regarding a surrender of plaintiff's stock. The defendant appeals from the judgment.

For the appellant there was a brief by *M. B. Hubbard* and *A. H. Shoemaker,* and oral argument by *Mr. Shoemaker.* They argued, among other things, that the plaintiff is estopped from claiming that her grantor was not a member of the association or a stockholder therein at the time the loan was made to him by it. *Ohio B. Asso. v. Leyden,* 1 Weekly L. Bul. 126; *Manship v. New South B. & L. Asso.* 110 Fed. 854; *Central B. & L. Asso. v. Lampson,* 60 Minn. 422, 62 N. W. 544; *Phelps v. Am. S. & L. Asso.* 121 Mich. 343, 80 N. W. 120; *Poock v. Lafayette B. Asso.* 71 Ind. 357; *How-*

-ard Mut. L. & F. Asso. v. McIntyre, 85 Mass. 571; Spear v.
Crawford, 14 Wend. 20; Reynolds v. Georgia State B. & L.
Asso. 102 Ga. 126, 29 S. E. 187; Concordia S. & A. Asso. v.
Read, 93 N. Y. 474; Bates v. Equitable B. & L. Soc. 65 Ill.
App. 529; Butler University v. Scoonover, 114 Ind. 381;
·Chase v. Merrimac Bank, 19 Pick. 564; Natchez B. & L.
.Asso. v. Shields, 71 Miss. 630; Hammerslough v. Kansas B.,
L. & S. Asso. 79 Mo. 80; City B. & L. Co. v. Fatty, 1 Abb.
Dec. 347. A grantee cannot set up usury in a mortgage he
:has assumed. Dewolf v. Johnson, 10 Wheat. 367; Ritter v.
Phillips, 53 N. Y. 586; Cope v. Wheeler, 41 N. Y. 303;
Barthet v. Elias, 2 Abb. N. C. 364; Sands v. Church, 152
N. Y. 174; Frost v. Shaw, 10 Iowa, 491; Hartley v. Harri-
.son, 24 N. Y. 170; Bearce v. Barstow, 9 Mass. 45; Post v.
Dart, 8 Paige, 641; Ferris v. Crawford, 2 Denio, 598;
.Morris v. Floyd, 5 Barb. 130; Cole v. Savage, 10 Paige, 591.

L. A. Doolittle, for the respondent, contended, inter alia,
that the contract under consideration in this case was usuri-
·ous because the bid made by Zach Bullman, which was the
beginning of the contract and which bound him to go on
and take the loan when his proposition was accepted, was ob-
-tained from him and made when he was not a member of
-the defendant association. People's B., L. & S. Asso. v. Ris-
ing (Tex.), 34 S. W. 147; Nat L. & I. Co. v. Stone (Tex.),
46 S. W. 69; Crenshaw v. Hedrick, 47 S. W. 71, 19 Tex.
·Civ. App. 52; Building & L. Asso. v. Griffin, 39 S. W. 656,
90 Tex. Sup. Ct. 480; Meyer v. Chattanooga S. & B. Asso.
(Tenn.), 48 S. W. 105; Endlich, Building Associations,
:§ 409; Cotton States B. Co. v. Reily (Tex.), 50 S. W. 961;
White v. Williams, 90 Md. 719, 45 Atl. 1001; Fidelity S.
Asso. v. Shea (Idaho), 55 Pac. 1022. The contract was
-usurious because Zach Bullman was given no opportunity to
bid for precedence in loaning in an open meeting of the stock-
holders. Sec. 2011, S. & B. Ann. Stats. 4 Am. & Eng. Ency.
-of Law (2d ed.), 1074; 5 id. 88, 89; Pfeister v. Wheeling B.

*Asso.* 19 W. Va. 684; *Bates v. People's S. & L. Asso.* 42 Ohio St. 655; *Stiles's Appeal,* 95 Pa. St. 122; *State ex rel. Att'y Gen. v. Greenville B. & S. Asso.* 29 Ohio St. 92; *Shannon v. Howard M. B. Asso.* 36 Md. 383; *Wilcoxen v. Smith,* 107 Iowa, 555, 78 N. W. 217; *Post v. Mechanics' B. & L. Asso.* 97 Tenn. 408, 37 S. W. 216; *Myers v. Alpena L. & B. Asso.* 117 Mich. 389, 75 N. W. 944; *Douglass v. Kananaugh,* 90 Fed. 373; *Mechanics & W. M. Mut. S. B. & B. Asso. v. Wilcox,* 24 Conn. 147; *Capilol Hill B. Asso. v. Hilton,* 1 Mackey, 107; *Brown v. Archer,* 62 Mo. App. 277; *Southern B. & L. Asso. v. Riggle,* 4 Pa. Dist. 617; *McCauley v. Workingman's B. & S. Asso.* 97 Tenn. 421, 37 S. W. 212, 35 L. R. A. 244; *Trowbridge v. Hamilton,* 52 Pac. 328, 18 Wash. 686; *Price v. Empire L. Asso.* 75 Mo. App. 551; *Sappington v. Aetna L. Co.* 76 Mo. App. 242; *Moore v. Cameron B. & L. Asso.* 74 Mo. App. 468; *Iowa S. & L. Asso. v. Heidt,* 77 N. W. 1050, 107 Iowa, 297; *Parker v. Fulton L. & B. Asso.* 46 Ga. 166; *Shannon v. Dunn,* 43 N. H. 194; *Melville v. Am. B. B. Asso.* 33 Barb. 103; *Anthracite B. & L. Asso. v. Lyons,* 2 Kulp, 409; *Jackson v. Cassidy,* 68 Tex. 282, 4 S. W. 541; *Lincoln B. & S. Asso. v. Graham,* 7 Neb. 173; *Meroney v. Atlanta B. & L. Asso.* 116 N. C. 882, 21 S. E. 924, 47 Am. St. 841; *Mills v. Salisbury B. & L. Asso.* 75 N. C. 292; *Vann v. Fayetteville B. & L. Asso.* 75 N. C. 494; *City Loan Co. v. Cheney,* 61 Minn. 83, 63 N. W. 250.

Bardeen, J. In so far as the findings and judgment depend upon irregularities or informalities in the proceedings leading up to Bullman's subscription for stock and his application for a loan, they have no basis to rest upon. When he made his application for a loan, he was chargeable with knowledge that the defendant had no right to loan money except to members. Such application for a loan was virtually an application for membership in the corporation. The application, the loan, and the issue of stock must be con-

sidered as one transaction, the result of which made him a member of the corporation; and under well-recognized principles neither Bullman nor the assignee of his stock can be heard to question the regularity of that transaction. *Leahy v. Nat. B. & L. Asso.* 100 Wis. 555, 76 N. W. 625. A person may become a member for the mere purpose and at the time of obtaining a loan. Endlich, Bldg. Asso. § 55; *Freeman v. Ottawa B., H. & S. Asso.* 114 Ill. 182, 28 N. E. 611. The mere circumstance that at the instant he signed the application for a loan he was not a member of the association is of no significance. Unless the loan itself violated some provision of the statute, it cannot now be impeached. Having accepted the loan and the stock issued to him, he cannot now be heard to say that he dealt with the association as a stranger, and his assignee certainly possesses no better right.

Neither did the fact that the bond and mortgage provided that in case of default in payments stipulated for a period of three months the whole principal debt should forthwith become due and payable render the loan usurious and void. It is true that the statute (sec. 2011, S. & B. Ann. Stats.) provides that such default shall exist for a period of six months, and that after such period has expired payment of the whole principal and interest, without deduction of any premium paid, or interest thereon, may be enforced by proceedings on the member's securities according to law. The contract in question runs contrary to the statute, but the validity of that feature of it is not here in issue. The defendant is not here seeking to enforce it. It in no way affects the real essence of the loan. If beyond the power of the corporation to make, the plaintiff is in no position to take advantage of it. The law does not, in terms, prohibit the parties from contracting for a shorter period. Whether the parties might legally contract for a different period than that named in the statute, we need not determine. It is enough to say

that the question is not here, and the attempt of the court to rest its conclusion upon it was wholly unwarranted. See *Leahy v. Nat. B. & L. Asso., supra.*

Another reason why the court believed the contract was unlawful and usurious was that Bullman was not given an opportunity to bid at an open meeting of the members of the association. Sec. 2011 of the statute aforesaid, among other things, provides that the by-laws of every such corporation shall fix the time of holding periodical meetings at which the money in the treasury shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the loan should be entitled to a loan of at least the full amount of a share for each share of stock held by him, if the association is in funds, upon giving good and ample security. The premium bid may be by a certain sum or percentage on the loan, to be deducted in advance, or may be by certain periodical payments during the existence of such loan, according as the by-laws may prescribe.

Under the articles of organization of defendant, power was given the board of directors to adopt such by-laws, not inconsistent with the articles, as they might deem necessary. The by-laws so adopted provided that the meetings of the stockholders should be held annually on the second Tuesday of June of each year. Regular meetings of the board of directors were to be held on Tuesday evening of each week for the purpose of loaning the funds of the association, and such meetings were to be open to the stockholders. At each such meeting precedence in borrowing money on hand was to be sold at auction to the highest bidder who would pay the highest monthly premium therefor, such premiums to be paid monthly during the continuance of the loan. Any member not desiring to be present might leave written authority with the secretary to bid for him, but no such bid was to be made unless the same was higher than that of any person present, or until all such bidders were satisfied. Payments

to the association on loans were to be made as set out in the statement, and continued until the dues paid on the stock, together with the dividends credited thereon, should equal the amount of the loan, at which time the stock was to be canceled and the mortgage released. Dividends were to be declared in January and July of each year, *pro rata* on the value of the stock.

We have already held that neither Bullman nor plaintiff is in a position to raise the question of want of membership at the time the application for a loan was made. Bullman's bid for a loan was made in writing. It was submitted at a regular open meeting of the board of directors. There is nothing in the statute requiring the person desiring a loan to be present at the meeting and make his bid in person. The by-laws expressly authorize a written bid. We see no reason why every purpose of the law is not met by a written bid filed with the secretary. *Hughes v. Farmers' S. & B. & L. Asso.* 46 S. W. 362. Counsel for the plaintiff lay some stress upon the fact that the bid was not presented at a meeting of all the stockholders. We do not think the statute contemplates that the stockholders should meet every time money is put up at auction. Under its articles of incorporation the business of the association was given to the control of its board of directors, who were also given power to adopt proper by-laws. One of their duties was to loan the surplus money. The by-laws provided that they should hold stated meetings, open to the stockholders, at which the money to be loaned was to be put up at auction. The members were bound to take notice of this provision, and if a loan was desired they might appear in person or submit their written bids. Open meetings of the board of directors, where any or all stockholders might be present, answer every demand of the statute. It was the natural and logical way of conducting their business, and surely does not contravene any provision of the statute.

Along this line is the further suggestion that a fixed rate of premium was charged, which, under a numerous line of decisions, made the contract usurious. The evidence shows that a great majority of the loans made were upon a bid of fifty-two cents per share per month as premium. This is accounted for by the testimony of the secretary, who says that he advised applicants that that rate, with the interest charged, would probably mature their stock in from seven and one-half to nine years; that he had been advised by an actuary versed in business of this kind that such were the results generally, and so many of the bids were put in on that basis. He also says that no rate had ever been fixed by the directors, and that every applicant was free to make whatever bid he chose. Such being the uncontradicted proof, there is no ground for saying that an arbitrary standard of rates had been fixed, so as to bring the case within the authorities cited. It is worthy of note that corporations of this kind, organized under our present statutes, are authorized to adopt fixed rates of premium and interest on loans. This was evidently done in deference to the fact that horizontal or uniform premiums, based upon a just profit to the association, have been demonstrated in actual experience as being more to the advantage of the association, and as of more fairness to the members desiring loans, than the other plan. Thompson, Bldg. Asso. § 188, p. 377; *Manship v. New South B. & L. Asso.* 110 Fed. 845. As said in the head-note of the case last cited,

"Uniform premiums are in fact more equitable, as between the borrowing members, than those determined in each case by the necessities of the borrower."

An appreciation of this fact, and a little closer reading of the case of *Bates v. People's S. & L. Asso.* 42 Ohio St. 655, upon which many of the decisions are based, would have prevented much of the confusion existing in the authorities and great injustice to associations of this kind. Judge NILES in

*Manship v. New South B. & L. Asso., supra,* clearly points out the misleading statements in Endlich, Bldg. Asso. § 409, and shows how the courts have been misled by them. It now being the policy of our law to permit premiums to be fixed by associations in this state, we do not feel bound to follow the extreme cases found in other states, holding contracts made on that basis invalid.

Finding 19, copied in the statement, is most striking in its facts. The court sets out certain features of the plan adopted by defendant in conducting its business, as being so vicious as to warrant the conclusion that it was merely seeking to loan money at high rates of interest, under the guise of a building and loan association, to avoid the penalty of usury. His first indictment is that it took the business of loaning out of the hands of the members generally, and vested it in the board of directors. This was a plan directly authorized by law and its articles of incorporation, and one approved by the experience and observation of any one familiar with the conduct of corporate affairs. The chief business of the corporation was to collect and loan money. Its entire profits grew out of fines for default in stock payments, and from loans. It would seem hardly necessary to argue that the business could best be done by a few chosen for that purpose, who were responsible to the body of members for their acts. His next serious charge is that they created two distinct classes of members,—a lending class and a borrowing class, whose interests were antagonistic. We do not quite appreciate the drift of this part of his finding. There never was and never can be an association of this kind that does not have the two classes of members,—the borrower and the nonborrower. Their interests are not antagonistic in any legal sense. One is an investor and the other sustains the dual relation of investor and borrower. Both are equally interested in the prosperity of the association. The failure of courts to appreciate the fact that the borrower becomes an in-

vestor to the amount that he pays on his stock has led to very much of the confusion in the case. Another complaint against the association was that it "put all real power into the hands of a board of directors." This was strictly according to law. Every corporation must have a managing body, and usually the smaller the number the better the management. This association was required to have a board of fifteen directors, chosen from the stockholders. Certainly the power of management was sufficiently disseminated to meet all practical demands. A final sweeping charge is that it was the policy to lend funds to persons not members, and generally to evade legal requirements as to bidding, and exact greater interest on loans than the law permitted. We have read the evidence with care, and are unable to find anything therein to support this conclusion. There is no proof of a single instance of a loan to one who was not a member, or who did not become a member at the time the loan was made. There is no proof of any arbitrary action on the part of the board of directors, or any evasion of the by-laws, to the oppression of members. As already suggested, the fact that many of the bids for money were at the same rate was not suggestive of oppression, or violative of the fundamental idea of such association. So long as rates of premiums were not arbitrarily fixed, and loans refused because the prescribed standard was not reached by the bid submitted, certainly no injury was done to the borrower. The fact that most borrowers come in on an equal footing does not tend to impeach the integrity of the management.

The fifth conclusion of law quoted in the statement indicates that the court labored under a misapprehension of the nature of the contract in question. The court says that it was "contemplated by the contract that the principal shall be diminished at the rate of $2.30 per month until it is all paid, the average amount upon which Zach Bullman was to pay interest was only $250, and the agreement to pay $2.60 a

month, or $31.20 a year, was an express agreement to pay interest at the rate of 12 48-100 per cent. per annum." The contract in question warrants no such conclusion. There is not a word in it that contemplates that dues on stock should be applied on the loan at any time before the stock reached its par value. The contrary idea is apparent from the very nature of the transaction, and from the very terms of the contract. All payments made by the borrower for interest and premiums went to the general credit of all stockholders, including the borrower. All payments on stock dues went to the credit of the paying stockholder, and each year as the total amount was increased, the dividends apportioned to each share increased, so that as the period of maturity approached, stock dividends were correspondingly larger, and shortened the time for which interest payments were to be made. By the terms of the by-laws and the contract itself, when such payments and the dividends apportioned thereto equaled the amount of the loan, or in other words when the stock reached par, it was to be applied on the loan and the stock was to be canceled and the mortgage released. The fact that the interest and premium payments together exceeded the rate of interest allowed under the general statute did not make the transaction usurious, because sec. 2013 says, "No premiums, fines or interest on such premiums that may accrue to any such corporation under the provisions of this chapter shall be deemed usurious." The interest reserved by the contract was within the legal rate, and the transaction cannot be deemed usurious unless the premium payments are tacked thereto. This, the statute says, shall not be done.

Defendant raises the question of plaintiff's right to contest the validity of the mortgage in suit. It is claimed that she purchased the premises and assumed the mortgage. The circumstances certainly point that way. On her examination before trial, plaintiff at one time testified that she was to

pay the mortgage, but later in her testimony took back the statement, claiming it was inadvertently made while she had lost her self-control and was weeping. The conclusions reached on other branches of the case render it unnecessary to discuss this situation. Even if it be conceded that she stands as a mere volunteer under her quitclaim, and that the mortgage was in fact tainted with usury, there is some question whether plaintiff could interpose such claim. *Ludington v. Harris,* 21 Wis. 239, which is claimed establishes her right to do so, was decided at a time when the law declared the contract made in defiance of the statute void. The court then speaks of the contract in suit as being void for usury. At the time the contract in suit was made, if affected by usury, it was enforceable, except as to interest. In *Bensley v. Homier,* 42 Wis. 631, this court denied the right of a junior creditor to make the defense of usury in a suit to foreclose a mortgage in which the mortgagor did not defend. Without referring to the *Ludington Case,* the following language was used:

"It is difficult to perceive why the defense given by the statute to the borrower, for his protection against oppression, and which he may waive at his pleasure, should be extended to any one but himself or his representatives. . . . The courts have generally held the defense of usury personal to the debtor, his privies in blood or estate, and privies to the contract; and that strangers to a contract cannot impeach it for usury."

Where the contract is declared void by the statute, there is good ground for saying that any one whose property is affected by it may take advantage of the fact. But when, as now, the statute only prevents a recovery of interest when the proper defense is made, and requires the person who desires to set up the defense of usury to prove a tender of the principal sum, there is some reason for saying that a mere quitclaim purchaser of the premises affected is not in a position to urge a defense which the borrower has waived by not mak-

ing it. We leave the question without decision, as not being necessary under the conclusions already stated in the case.

It follows from what has been said that plaintiff is not entitled to the relief granted her in the court below. The right of defendant to charge up fines against delinquent members is expressly given by the by-laws. Plaintiff, not having made payments according to the requirements, is in no position to contend against their enforcement. Inasmuch as the statute in force when the loan was made permitted the borrower to repay his loan at any time, and as the relations between the parties have become somewhat strained, we have deemed it best to remand the case with directions to enter a judgment permitting plaintiff to redeem the premises and sever her relations with the association, or dismiss the case, at her option. The association has heretofore offered to apply the amount paid as interest, premiums, and stock dues on the mortgage debt, and to release the mortgage upon payment of the balance due. Upon the assumption that such offer is still good, judgment may be entered permitting plaintiff to free the premises from the mortgage by paying to defendant the amount actually due on her loan for interest, premiums, and fines, according to the by-laws, at the time of the entry of judgment, with costs of suit, less the amount paid to the association and dividends declared on her stock. Or, to state it otherwise, plaintiff shall comply with the terms of her contract to the date of the entry of judgment, and shall receive credit for what she has already paid the association, with dividends, if she desires to redeem. The payment of the balance due, with costs, will entitle her to a release of the mortgage. In such an event her stock should be surrendered for cancellation. In case plaintiff shall not elect to enter the judgment as suggested, the action will be dismissed.

*By the Court.*—The judgment is reversed, and the cause is remanded for further proceedings as directed in the opinion.