Commonwealth Trailer Sales, Inc., appellee, v.
George Bradt et al., appellants.

87 N. W. 2d 705

Filed January 31, 1958. No. 34255.

*Thomas D. Brower* and *George P. Burke*, for appellants.

*Healey, Davies, Wilson & Barlow, Jack R. Knicely*, and *Patrick W. Healey*, for appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Wenke, J.

This is an appeal from the district court for Kimball

(1)

County. It involves a replevin action commenced on September 12, 1956, by Commonwealth Trailer Sales, Inc., whereby it seeks to recover a 1951 Kit house trailer from George Bradt, the sheriff of Kimball County, and Guy Fleming. Plaintiff's right to the possession thereof is based on a chattel mortgage given it by Tommy and Maxine Williams. Trial was had to a jury. After both sides rested the trial court sustained plaintiff's motion for a directed verdict and rendered a judgment accordingly. Their motion for new trial having been overruled, the defendants perfected this appeal.

Appellee, Commonwealth Trailer Sales, Inc., is a Kansas corporation authorized to do business in the State of Nebraska. It engages in the selling of mobile homes, which includes house trailers. It has its principal place of business in Nebraska on U. S. Highway No. 30 near Sidney, in Cheyenne County. We will herein refer to this place of business as the Sidney office. Appellant George Bradt was, at all times herein material, the duly elected, qualified, and acting sheriff of Kimball County. We shall herein refer to him as the sheriff.

On September 10, 1955, appellee, through its Sidney office, sold to Tommy and Maxine Williams, husband and wife, of Kimball, Nebraska, a used 1951 Kit house trailer, serial No. 7917. We shall hereinafter refer to it as the house trailer and to Tommy and Maxine Williams as the Williams. The house trailer cost the Williams a total of $3,063.60. This total consisted of a cash price of $2,795; a time price differential of $88.85; an insurance premium of $170.75; and charges for credit investigation, filing, and title fees of $9. Of this total amount the Williams paid $200 in cash, thus leaving an unpaid balance of $2,863.60.

As evidence of owing this amount the Williams executed a note to appellee whereby they agreed to pay "$62.50 Dollars on the 22nd day of September, 1955 and a like amt. due on the 7th & 22nd days of each succeeding month thereafter for four months. $2301.10

due on the 25th day of Jan. 1956." The Williams paid all these installments except the balloon payment of $2,301.10 due on January 25, 1956. The installments paid thereon totalled $562.50.

To secure this indebtedness the Williams, on September 10, 1955, executed to appellee a chattel mortgage on the house trailer. This chattel mortgage appellee caused to be filed in the office of the county clerk of Kimball County. Thereafter, on October 27, 1955, appellee assigned to the Williams a transfer of its certificate of title to the house trailer. On January 11, 1956, the Williams obtained a new certificate of title thereto in their own names from the county clerk of Kimball County on which was endorsed the lien thereon as evidenced by the chattel mortgage.

When the $2,301.10 balloon payment became due on January 25, 1956, it was not paid but the time for the payment thereof was extended. A new note was taken therefor by appellee from the Williams on February 20, 1956. This renewal note was in the sum of $2,774.90 and payable as follows: "$77.50 Dollars on the 25th day of March, 1956 and each succeeding month thereafter for twenty months. $1234.90 due on the 25th day of the twenty first month (20 @ $77.50 & 1 @ $1234.90) * * *." The items included to arrive at this total are as follows: Balloon payment of $2,301.10 due January 25, 1956, under terms of the original note and which had not been paid; insurance premium of $100.14; and a handling charge, referred to as a "Time Price Diff." of $373.66. It is undisputed that this latter amount was the charge made by appellee for extending the indebtedness for the length of time and as hereinbefore set forth. To protect the indebtedness evidenced by the new note appellee secured from the Williams another chattel mortgage on the house trailer. It is dated February 20, 1956. The Williams paid $232.50 on this indebtedness and were given a credit of $67.80 thereon, being the amount due them as credit on life insurance coverage.

"The permissive provisions of sections 45-114 to 45-158, R. R. S. 1943, apply to licensees, but every inhibitory provision contained therein applies alike to licensees and nonlicensees and the officers and employees of either or both, * * *." State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

Section 45-138, R. S. Supp., 1955, provides, insofar as here material, as follows: "(1) No licensee shall directly or indirectly charge, contract for, or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of one thousand dollars. * * * (3) * * * Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is substantially greater in amount than any preceding installment."

Sometime in the summer of 1956 the Williams abandoned the house trailer. On August 22, 1956, the sheriff of Kimball County attached the house trailer. He did so under and pursuant to an order of attachment issued out of and by authority of the county court of Kimball County on that date. The order of attachment was issued at the instance of Henri Johnson, administrator of the Kimball County Hospital, in an action which the hospital had instituted in the county court against the Williams on an indebtedness of $101.40 which they claim the Williams were owing it. The sheriff again attached the house trailer on September 4, 1956. He did so under and pursuant to an order of attachment issued out of and by authority of the county court of Kimball County on that date in an action therein wherein Kenneth C. Fritzler, doing business as Kimball Finance Company, was seeking to recover from Tommy Williams the sum of $944.90. It was after the house trailer had been attached by the sheriff and while he

was holding it under such attachments that it was replevined by appellee. Under this situation the question is, can the sheriff, who has attached the house trailer for general creditors of the Williams, avail himself of the defense of usury as it applies to the installment loan of the Williams? We shall assume, for the purpose of discussing this question, that the transactions herein set forth between appellee and the Williams was in violation of the restrictive provisions of the Installment Loan Act hereinbefore set forth.

The general rule is that the defense of usury is for the benefit of the borrower and is personal to him. See, 91 C. J. S., Usury, § 71, p. 648; 55 Am. Jur., Usury, § 121, p. 409.

As stated in 91 C. J. S., Usury, § 71, p. 648: "Since usury laws are enacted for the protection of needy borrowers, and not to punish extortion in money lenders, the defense of usury is purely personal to the borrower, or those in privity with him, as discussed infra § 126, such as the debtor's sureties, guarantors, heirs, devisees, and personal representatives. This is true whether the statutes declare the contract void in whole or only to the extent of the usury, or whether a penalty is given for the taking. In order to question the validity of a usurious contract, the right must be based on the original debtor's right."

We held in Cheney v. Dunlap, 27 Neb. 401, 43 N. W. 178, 5 L. R. A. 465, that: "The plea of usury as a defense is personal to the borrower and his sureties and privies."

That is, persons in privity with a borrower have the right to attack a transaction as usurious. 91 C. J. S., Usury, § 126, p. 714; 55 Am. Jur., Usury, § 122, p. 410. But strangers thereto may not take advantage thereof. 91 C. J. S., Usury, § 125, p. 713. As stated in 91 C. J. S., Usury, § 124, p. 712: "* * * even though the taking of usury is prohibited and is made punishable as a misdemeanor, the usurious contract will not be void as to third persons."

However, the courts are not all in accord as to just what status a person must have in relation to the borrower in order to be entitled to attack a transaction as usurious. As stated in 55 Am. Jur., Usury, § 121, p. 409: "* * * the principal difficulty lies in determining who come within the exception in favor of privies of the debtor."

The sheriff here stands in the shoes of the attaching creditors insofar as any rights may have been obtained by the attachment in and to the property attached.

As stated in 91 C. J. S., Usury, § 131, p. 723: "As a general rule, in the absence of an intent to defraud, general creditors are not allowed to set up usury exacted from a debtor in order to defeat or reduce liens on the debtor's assets." See, also, 55 Am. Jur., Usury, § 124, p. 411.

But in any event the sheriff could acquire no greater rights in and to the property attached than the debtor-owner thereof possessed. We have often held that a purchaser of the equity of redemption cannot avail himself of the usurius contract of his grantor. See, Cheney v. Dunlap, *supra;* Male v. Wink, 61 Neb. 748, 86 N. W. 472; Bolen v. Wright, 89 Neb. 116, 131 N. W. 185. As stated in Bolen v. Wright, *supra:* "In support of this claim defendants have cited a number of cases, commencing with Cheney v. Dunlap, 27 Neb. 401, and ending with People's Building, Loan & Savings Ass'n v. Pickard, 2 Neb. (Unof.) 144. From an examination of those cases, it appears that the controlling point in each of them was that the person seeking to interpose the plea of usury was a stranger to the usurious contract, and it was held: 'A mere purchaser of the equity of redemption, being neither surety nor privy, cannot avail himself of the usurious contract of his grantor to which he is a stranger and plead usury in such contract.' Cheney v. Dunlap, supra." The same is true of our holding in a case wherein a subsequent lienholder to a mortgage loan that was usurious sought to raise this issue. See First

State Bank v. Niklasson, 116 Neb. 713, 218 N. W. 744. As therein stated: "The further contention of defendant that the note and mortgage of St. Edward bank was usurious cannot be sustained, for the reason that the defense of usury is personal to the debtor, his privies and sureties." In view of these, and other holdings of this court, we do not think the sheriff is in a position to raise the defense of usury. See, also, Fenby v. Hunt, 53 Wash. 127, 101 P. 492; Halsey v. Winant, 258 N. Y. 512, 180 N. E. 253. We think, as stated in 55 Am. Jur., Usury, § 122, p. 410, that: "The rule embraces the heirs, legal representatives, and devisees of the borrower or debtor and those who stand in the relation of sureties, guarantors, or accommodation indorsers, with respect to the tainted obligation." This classification would not include officers who attach the property of debtors for attaching creditors.

We realize there are cases to the contrary. See 55 Am. Jur., Usury, § 124, p. 411. Of these cases Marx v. Hart, 166 Mo. 503, 66 S. W. 260, 89 Am. S. R. 715, is an example. However, we do not think they come to a correct conclusion on any proper legal reasoning or logic in view of our previous holdings. It is true that the Legislature has broadened the scope of the effect of usury, as it relates to installment loans, in comparison to what it was and now is in the case of ordinary loans. See § 45-105, R. R. S. 1943. But it does not appear that the Legislature, by the enactments relating to installment loans, has extended the scope thereof as to those to whom it is available as has been previously fixed and determined by this court. If the Legislature intended to do so it could have easily done so by proper language. It is neither the privilege nor the desire of this court to do so in the absence thereof for what is usury, and the effect thereof, is a subject for the Legislature.

In view of the foregoing we find the trial court came

to the correct conclusion and therefore affirm its judgment for appellee.

AFFIRMED.

SIMMONS, C. J., dissenting.

"It is suggested that the plea of the statute is personal to the debtor, and that he cannot be compelled to plead it. On the other hand, it seems equally evident that the debtor cannot aid the creditor in defeating *his* creditors who have secured a lien upon the debt before the same was barred by the statute by such a plea. Such a holding would permit the garnishee to defeat the plaintiff, and, later on, by a plea of the statute defeat the claim of the debtor (its creditor), and thus retain the fund to which it has no legal claim." Jacoby v. Dvorak, 111 Neb. 683, 197 N. W. 428.

What the court there condemned it now embraces.

Plaintiff's alleged cause of action rests on an illegal usurious contract. It would not be permitted to recover if the Williams had pleaded the defense of usury.

The holding here permits the Williams (by inaction) "to defeat the" defendants who hold under a valid attachment and later on by a plea of usury "defeat the claim of the" plaintiff "and thus retain" the property free from the attachment of the valid creditors.

By doing nothing, the court has enabled the Williams to "defeat" the payment of their debts to the attaching creditors so far as securing payment out of this property is concerned. The defaulting debtor and the creditor holding the illegal instruments prevail.

It is suggested that the Williams can defeat the plaintiff's claim by a proper proceeding and that the creditors can *then* attach. This has two defects. First, it presupposes that the Williams will assert their rights. It leaves the attaching creditors no rights in the property if the Williams do not act. It leaves open to the attaching creditors action in the event the Williams resist the plaintiff's illegal alleged cause of action and in the event the attaching creditors can then locate and

reach the property, which is now in the custody of the court. Such a circuitous proceeding is not, in my opinion, an adequate remedy at law nor does it do justice.

The court relies on a proper rule when properly applied and that is that the plea of usury is personal to the borrower and his sureties and privies.

The court states that usury laws are "for the protection of needy borrowers, and not to punish extortion in money lenders, * * *." The rule is used here not to protect a borrower but to protect the usurer. All that is necessary here is to construe the rule so that the sheriff representing an attaching creditor is held to be in privity with the debtor as against the usurer.

The court has defined privity as meaning "Mutual or successive relationship to the same rights of property." Consumers Public Power Dist. v. Eldred, 146 Neb. 926, 22 N. W. 2d 188.

Other courts have considered this issue and have held contrary to the conclusion of the court herein. I refer to some of the other decisions that have stood the test of time. In Dix v. Van Wyck, 2 Hill (N. Y.) 522, the court said: "It has never been doubted that one who is privy in representation, as the executor—or in blood, as the heir, may set up the usury. So also may one who is privy in estate, as the grantee of him who made the usurious conveyance. * * * In short, the exception we are considering comes about to this—a mere stranger, or one who has no legal interest in the question, shall not officiously intermeddle in the matter, and take advantage of a statute which was not made for his benefit. But a creditor who has obtained a judgment and execution cannot be regarded as a mere stranger. He may seize and sell the property of his debtor, and try the title of any one who sets up a prior lien or incumbrance affected by usury."

In Thompson v. Van Vechten, 27 N. Y. 568, the court said: "The plaintiff's mortgage, being founded on an usurious consideration, was utterly void against all the

other parties having liens on the property." The court held: "Any party having a lien on a chattel may avoid for usury a mortgage claiming priority."

In Carow v. Kelly, 59 Barb. (N. Y.) 239, the court by Cardozo, J., held: "* * * the defense of usury is a personal one, and cannot be pleaded by one having neither privity of estate nor of blood with the borrower —that is to say, by a mere stranger. But a person who, like an execution creditor, asserts a lien upon the property, is not a stranger, within the meaning of the rule."

I quote these three decisions because in Stein v. Swensen, 44 Minn. 218, 46 N. W. 360, the Supreme Court of Minnesota following the New York decisions held: "It is suggested by the appellant that the sheriff was not authorized, by reason of his holding the property under attachment against the mortgagors, to avail himself in this action of the alleged invalidity of the mortgages for usury. We held that he might make that defence. It is held that the defence of usury may be made by creditors or the officer who has acquired a lien upon the property by execution. Dix v. Van Wyck, 2 Hill, 522; Thompson v. Van Vechten, 27 N. Y. 568; Carow v. Kelly, 59 Barb. 239. The legal privity in estate with the mortgagor, the owner of the property thus acquired, is sufficient to justify the assertion of the invalidity of the prior incumbrance on the property. There is no reason for a distinction in the case of liens by attachment."

In American Rubber Co. v. Wilson, 55 Mo. App. 656, it was held: "The defense of usury is a personal privilege of the debtor, his privies in representation, in blood, or in estate, as his vendee, execution creditor, or, as in this case, his attachment creditor who may defend against his debtor's mortgage on the ground that it secures usury, * * *."

This case is approved in Coleman v. Cole, 158 Mo. 253, 59 S. W. 106, and Marx v. Hart, 166 Mo. 503, 66 S. W. 260, 89 Am. S. R. 715.

Judgment creditors having a lien on the land mortgaged may set up the defense of usury against a mortgagee. Union Bank at Massillon v. Bell, 14 Ohio St. 200. See Carpenter v. Devitt, 49 Cal. App. 2d 473, 122 P. 2d 79, holding that a sheriff and creditors are privies.

In Hamilton Brown Shoe Co. v. Mayo, 8 Tex. Civ. App. 164, 27 S. W. 781, it was held that a bona fide creditor of an insolvent firm may set up usury, as against a preferred creditor, though his attachment lien is acquired after the accrual of the usurious debt.

Here the court relies upon and cites two decisions from other jurisdictions, one of which is Halsey v. Winant, 258 N. Y. 512, 180 N. E. 253. That case was decided on the basis of a particular New York statute. It has no application here as is shown by the following quotation from the opinion: "Thompson v. Van Vechten (27 N. Y. 568) was an action brought by the holder of a usurious chattel mortgage seeking injunctive relief for the appointment of a receiver and for payment into court for distribution. The defendants were lien holders under mortgages and executions on judgments. It was held that the plaintiff could not use his usurious mortgage to attack their liens.

"With the exception of Thompson v. Van Vechten, these cases are all actions at law, and in that case the plaintiff was seeking to enforce his usurious contract against lien holders." (The decision in Thompson v. Van Vechten is quoted *supra*.) I submit that Halsey v. Winant, *supra,* is no authority here.

This leaves the court for reliance on Fenby v. Hunt, 53 Wash. 127, 101 P. 492.

The six cases cited by the Supreme Court of Washington to sustain its decision in the above case may be analyzed briefly as follows: (1) Pritchett v. Mitchell, 17 Kan. 355, 22 Am. R. 287, was a case where a second mortgagee attempted to plead usury in order to defeat the first mortgage. He was held to be a "stranger to the transaction." Of this decision the Supreme Court

of Kansas has in State ex rel. Smith v. McMahon, 128 Kan. 722, 280 P. 906, 66 A. L. R. 1072, said: "* * * the ruling in Pritchett v. Mitchell, 17 Kan. 355, that the exaction of usury is a mere contractual matter of no concern to anybody but the parties themselves is imperatively in need of revision * * *." In that case the court directed the use of the injunctive process to stamp out the business of usury.

(2) Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S. W. 1006. In this case a mortgagee extended the maturity of the note. He was paid usury for doing so. It was held that the creditor could not retain the payment and plead usury when sued for a breach of the contract. This case was decided on the theory that the usury laws were solely for the protection of the debtor. However, in the subsequent case of Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673, the court criticized the above decision. We shall return to Johnson v. Grayson, *supra,* later. In any event the court now admits that Missouri holds contra to that decision.

(3) In Pardoe v. Iowa State Nat. Bank, 106 Iowa 345, 76 N. W. 800, on the theory that the right to take advantage of usury was personal to the debtor and on the language of a statute it was held that a usury paying debtor could not transfer his right to recover the penalty.

(4) Mason v. Pierce, 142 Ill. 331, 31 N. E. 503, holds that a judgment creditor is not in privity with a mortgagor so as to enable him to set up the defense of usury in his own behalf. It was a case, however, where the mortgagor has paid the mortgage by a conveyance of the land. The suit was one to cancel the deed and redeem.

(5) Adams v. Robertson, 37 Ill. 45. Here two debts were secured by a common mortgage. It was held that one of the creditors who had not had illegal interest taken from him and from whom none is sought cannot raise the claim of usury in behalf of a debtor against the other creditor.

(6) Bensley v. Homier, 42 Wis. 631, held that in a suit to foreclose a mortgage, a junior judgment creditor could not make the defense for himself that the mortgage was void for usury. The court limited its opinion to the precise question there presented. Of interest is the case of Bennett v. Keehn, 57 Wis. 582, 15 N. W. 776, stating first that the judgment in Bensley v. Homier, *supra,* "went upon special grounds" and holding that a grantee in a deed, where a mortgage debt was not assumed nor the amount thereof deducted, could "interpose the same defenses to the mortgage that the mortgagor might have interposed." I cite this here because of its bearing on the court's reliance on the equity of redemption rule.

In Boleman v. Citizens' L. & B. Assn., 114 Wis. 217, 90 N. W. 199, the court referred to Ludington v. Harris, 21 Wis. 239, where it was held that a grantee by quitclaim could raise the defense of usury against a mortgage, he not having agreed that "the mortgage debt shall be paid out of the land." It pointed out that Ludington v. Harris, *supra,* was decided when the statute declared the usurious contract "void" and held: "Where the contract is declared void by the statute, there is good ground for saying that anyone whose property is affected by it may take advantage of the fact." I quote this here although it directly supports my views on the last proposition advanced in this dissent.

The Washington case is a weak crutch.

The court quotes from 91 C. J. S., Usury, § 131, p. 723, stating that as a general rule general creditors are not allowed to set up usury. The court quits reading too quickly. The same authority in section 131 on page 723 states: "While there is authority apparently to the contrary (citing only Fenby v. Hunt, *supra),* according to some cases an attaching creditor is a privy in representation with the debtor in attachment and therefore may take advantage of usury in a prior transaction or

lien between the debtor and the usurer in the absence of waiver by the debtor."

But the court says: "We have often held that a purchaser of the equity of redemption cannot avail himself of the usurious contract of his grantor."

This reasoning is faulty when applied to this case. It assumes that the Williams had only an equity of redemption in the property, whereas under our decisions, referred to hereinafter, they were the owners of the entire interest in the property. We are not dealing here with an equity of redemption. One who holds merely an equity of redemption takes subject to the mortgage debt.

The rule is stated in 55 Am. Jur., Usury, § 133, p. 417, as follows: "* * * it is generally held that a plea that the mortgage is void for usury cannot be made by the purchaser of the mere equity of redemption, it being presumed that in making the purchase he took the mortgage into consideration." Cheney v. Dunlap, 27 Neb. 401, 43 N. W. 178, 5 L. R. A. 465, is cited as authority.

The reason for the rule is obvious. Its limitations and its nonapplicability to the situation here is demonstrated in National Mutual Building & Loan Assn. v. Retzman, 69 Neb. 667, 96 N. W. 204. In that case the purchaser of an equity of redemption took subject to a mortgage, "assuming balance unpaid, which may be found to be due." The parties used the language treating the "mortgage as tainted with usury." The purchaser retained out of the purchase price only enough to pay what was due "without usury." Plaintiff claimed defendant, as purchaser of the equity of redemption, was estopped to set up the plea of usury and that he not being "a privy to the contract" could not plead the defense of usury. Plaintiff relied upon Cheney v. Dunlap, *supra,* and subsequent cases, as does the court here. The court held: "We think the authorities are very clear to the effect that usury is a defense personal to the

borrower, his privies or representatives, to be waived by him but only available to him, and not to one who purchases his equity recognizing the validity of the mortgage, and retaining from the purchase price a sum sufficient to pay such mortgage in full. The reason of the rule is not far to seek. Equity declares that the purchaser under such circumstances shall not be permitted to get a larger estate than he bargained for. The rule is based in the universal requirement of good faith, so that when the owner of the equity of redemption permits a reduction from his interest of the full amount of the usurious incumbrance, he never intends this as a gift or concession to his vendee, but as a waiver of the personal defense of usury; and when the vendee takes subject to the full incumbrance, including the usury, he forfeits the defense of usury, because he has already gotten all he bargained for, and the defense of usury would give him more than that, namely, the amount deducted from the purchase price by the owner of the equity upon the belief that the full amount of the incumbrance would be paid. Equity will not aid a purchaser to get an estate at a less price than he has agreed to pay for it."

So much for the reason for the rule.

What was its application? The court held that the original mortgagor would not have been obligated to pay more than the principal sum with legal interest; the purchaser of the equity of redemption retained only enough of the purchase price to pay the debt without usury; and that *the purchaser of the equity of redemption could plead usury.* The court held there was no injustice in permitting the plea. There was no reason in the nature of an estoppel to deny the right to the plea of usury. And so here, there is no reason to deny the right of the defendants to plead usury, there is no estoppel, there is no injustice in permitting it. To deny it here is to permit the plaintiff to succeed in enforcing a usurious contract fully and completely condemned by

the statutory laws and the decisions of this court.

This reasoning also applies to First State Bank v. Niklasson, 116 Neb. 713, 218 N. W. 744, relied on by the court. The holding was: The defense of usury is personal to the debtor, and may not be successfully pleaded by the holder of a junior mortgage expressly taken subject to the mortgage to which the defense is sought to be applied.

The court in deciding this case resorts to a judicially declared rule of law. It is not a statutory rule. It is not a rule of property. It is a rule that is subject to reasonable construction and application. It has its limitations and exceptions as the above holdings demonstrate. It is a rule declared and controlled by the court. The court needs no legislative permission to do justice in this case. Up to this point we have been considering that rule of law and its inapplicability to this case.

I now turn to a legislative rule of law applicable to the loan here involved.

The Legislature has spoken in clear and unmistakable language. Under the general usury statute the contract "shall not on that account be void." § 45-105, R. R. S. 1943. Only the recovery of interest cannot be recovered in an action on the contract. The obligation to repay the indebtedness without interest is enforceable.

The court quotes part of a sentence from State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215. I quote the entire sentence, emphasizing the part not quoted by the court: "The permissive provisions of sections 45-114 to 45-158, R. R. S. 1943, apply to licensees, but every inhibitory provision contained therein applies alike to licensees and nonlicensees and the officers and employees of either or both, *and the violation thereof by such persons in connection with any indebtedness, however acquired by them, renders such entire indebtedness void and uncollectible.*"

In Johnson v. Grayson, *supra,* the court was dealing

with a statute that declared mortgages or pledges of property to secure the payment of a usurious obligation to be "invalid and illegal." Our statute and our decisions say "void and uncollectible."

A plea of usury was interposed against one who undertook to recover on a pledge of a promissory note. Material here is the holding of the court that: "Is the pledge void only upon the plea of the pledgor or his privies? Is it void only when the immediate parties to the illegal transaction desire it to be void? The statute does not say so. It says it is void 'in any case' when the validity of the lien is drawn in question. *It is not void because the immediate parties to the transaction invoke its invalidity, but because the General Assembly has said it is void. Public policy condemns it, and it matters not from what source the objection comes."* (Emphasis supplied.)

As against a legislative declaration that any contract of loan made in violation of this section, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest or charges on such loan (§ 45-138, R. S. Supp., 1955, quoted in State ex rel. Beck v. Associates Discount Corp., *supra,* and McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1), the court now holds that the indebtedness is void and uncollectible *only* upon the plea of the pledgor or his privies.

The statute does not say so. The statute says that it is the violation of the usury laws that renders the indebtedness void and uncollectible. The court now says that result is to be accomplished only if the debtor or his privies wish to raise the question.

In McNish v. General Corp., *supra,* the court held it was the duty of a court to lend its aid to carry out the declared "public policy of the Legislature." The court now says it has that duty only if the debtor or his privies desire it, and that although the court held in the

McNish case that: "Public policy, as it relates to the effect of any violation of statutes dealing with installment loans by those engaged in the making thereof, *has been fixed by the Legislature and not the courts.*" (Emphasis supplied.)

Using the language of the Supreme Court of Missouri, I would hold that public policy as declared by the Legislature condemns this transaction and it matters not from what source the objection comes. In fact, in State ex rel. Beck v. Associates Discount Corp., *supra,* we did just that. In the Beck case the Attorney General pleaded usury. He sought an injunction. The right of the plaintiff to raise that issue and secure an adjudication of the validity of contracts was presented. The court answered that contention in part in holding that "all of such borrowers are regarded not as in pari delicto but as in viniculus to defendants, * * *." The court affirmed this language by a direct quote in the McNish case, and now the court holds that the captive debtor in his "chains" or his privy, must plead usury or else the public policy of the Legislature declaring these transactions void and uncollectible cannot be carried out. The captive debtor now has it in his power to render inoperative and ineffective a solemn legislative act. The court no longer says to the Legislature, "Thy will be done," but "Thy will be done if the usurer's captive chained borrower permits."

I disagree.

CARTER and CHAPPELL, JJ., concurring.

We agree with the majority opinion. However, in view of the dissent we desire to point out the fallacy of its reasoning. The general usury law of this state since 1879 has provided that if interest is contracted for, received, or reserved, in excess of the maximum fixed by law, no interest is collectible. Under the holdings of this court, only the debtor and those in privity with him could avail themselves of the benefits of this statute. Under the Installment Loan Act, if usurious interest is

contracted for, received, or reserved, neither interest nor principal is collectible. The penalty for the violation of the usury provisions has been increased, but the rule that the defense of usury is available only to the debtor and his privies has not been changed. Such a change is a proper subject of legislation and not one that properly can be made effective by judicial pronouncement.