NATIONAL MUTUAL BUILDING AND LOAN ASSOCIATION, APPELLANT, V. FERDINAND RETZMAN ET AL., APPELLEES.

FILED JULY 3, 1903.   No. 12,728.

1. Contracts: VALIDITY. Contracts made in this state, by residents of this state, with foreign building and loan associations, such contracts being made through agents of such associations located in this state, are Nebraska contracts, and their construction, validity and enforcement are governed by the laws of this state.

2. Purchaser of Equity of Redemption: USURY: ESTOPPEL. The rule that the purchaser of the equity of redemption, who purchases subject to a mortgage, and who deducts from the purchase price sufficient to pay such mortgage, is estopped to defeat the mortgage on the ground of usury, is not applicable when the vendee and the mortgagor, at the time of sale, agree that the incumbrance is tainted with usury, and there is retained out of the purchase price only enough to pay the incumbrance, less any usurious penalties.

3. Evidence: USURY. Evidence examined and *held* that defendant was not estopped to set up the plea of usury.

4. Evidence. Evidence examined and *held* to sustain the judgment.

APPEAL from the district court for Harlan county: ED L. ADAMS, DISTRICT JUDGE. *Affirmed.*

*C. M. Miller,* for appellant.

*John Everson* and *Gomar Thomas, contra.*

KIRKPATRICK, C.

On December 4, 1900, The National Mutual Building and Loan Association of New York, a foreign corporation, filed in the district court for Harlan county a petition, making Ferdinand Retzman and Magdalena Retzman, his wife, defendants, alleging its corporate existence under the laws of the state of New York; that it was authorized to transact business of a building and loan association, and its authority to do business in the state of Nebraska; that in June, 1890, Alice G. Simms made application in writing for membership in plaintiff association, and subscribed for twenty shares of plaintiff association's stock, which application was accepted and the shares issued; that in July, 1890, Alice G. Simms, as such member, applied for a loan of $2,000, which was granted, payable in instalments, the last payment to be made on completition of certain buildings, as stipulated in her application; that on March 13, 1891, Alice G. Simms gave a bond mortgage and assignment of her shares of stock to plaintiff, to secure the payment of her loan. From the petition it appears that the mortgage bond contained the usual stipulations and conditions, that upon failure to pay as therein agreed, the whole principal sum, including arrearages of interest, premiums, dues and fines, at the option of the mortgagee, became due and payable; contained the description of certain lots in Alma, Nebraska, the property mortgaged. The petition alleged failure on the part of Alice G. Simms, and the defendants Retzman to pay certain monthly dues of $10 from January to March, 1899; that three months had elapsed since default; that plaintiff elected to consider the whole amount of $2,000 due and payable, including interest at six per cent. from January, 1899, together with a monthly premium of $10 from March 13, 1899, amounting on June 1, 1900, to $170 and $24.33 permiums, subject to the application thereon of the value of the aforesaid shares in accordance with a collateral agreement in the bond that upon default in the stated payments said shares might be

canceled, and their maturity value applied on the loan. It was alleged that the withdrawal value of these shares was on June 1, 1900, $1,296, that said shares were canceled, and the amount mentioned applied on the loan; that no proceedings had been had at law; that there remained due $898.13. The petition alleged the conveyance of one-half interest in the premises covered by the mortgage by deed from Alice G. Simms, and her husband B. M. Simms, on March 1, 1895, to defendant Ferdinand Retzman, subject to plaintiff's mortgage; that Retzman, on July 24, 1896, conveyed his undivided one-half to Magdalena Retzman, his wife, subject to plaintiff's mortgage; that on March 7, 1898, Alice G. Simms conveyed her remaining one-half to her husband, B. M. Simms; that on March 15, 1898, Simms and wife conveyed this remaining one-half to Ferdinand Retzman, subject to plaintiff's mortgage. The plaintiff further alleged that by accepting this deed from Ferdinand Retzman, subject to plaintiff's mortgage, Magdalena Retzman was estopped from setting up the defense of usury against the mortgage; that by accepting the deed from Simms subject to the mortgage, Ferdinand Retzman was estopped in the same manner, closing with a prayer for judgment.

Ferdinand Retzman answered, admitting the execution of the mortgage for $2,000; that Alice G. Simms subscribed for the shares of stock as alleged, but for the sole purpose of obtaining the loan; pleaded that the mortgage was a Nebraska contract, and that Alice G. Simms agreed to pay for the use and forbearance of the money loaned the sum of $240 per annum; admitted that on March 1, 1895, he bought a half interest in the mortgaged premises, Simms and wife warranting the title to be free of all incumbrances except plaintiff's for the sum of $1,237; admitted that he agreed to assume half this indebtedness, and thereafter paid his share upon the indebtedness at the rate of $240 per annum; that under this agreement he paid and plaintiff received and accepted the sum of $1,388; alleged that on March 15, 1898, he purchased of the Simmses the

other half interest, agreeing to pay the amount remaining due upon the mortgage not to exceed $85, and that as sole owner he paid to plaintiff $236; admitted the cancelation of the shares, but alleged that he had not received full credit therefor; alleged that Alice G. Simms and B. M. Simms had confederated and conspired with plaintiff to compel defendants to pay a large amount on the mortgage, although plaintiff and Simms well knew its usurious character; and that the failure of plaintiff to make the Simmses defendants was part of the conspiracy; prayed that the Simmses be made defendants; an accounting and disclosure of the assets of plaintiff, and ·cancelation of the mortgage with decree that it had been fully paid. Magdalena Retzman's answer denied generally, and pleaded that at the time of the creation of the alleged liability she was under coverture.

Alice G. Simms and B. M. Simms filed a joint answer and cross-petition, alleging the transfer of March 1, 1895, of one-half interest, and of March 15, 1898, of the other half interest, to Retzman; his assumption of plaintiff's mortgage; that at the time of the second transfer the stock of goods was valued at $1,033.50, the interest of the Simmses being $516.75; the value of the real estate was $2,000, the interest of the Simmses being $1,000, making the total interest of the cross-petitioners $1,516.75, which was agreed by Retzman to be paid for the interest of the cross-petitioners; that he paid $1,000, assuming to pay $500 on the mortgage; that he had paid thereon only $118; they accordingly prayed that, if the court find nothing due to plaintiff from Retzman, he be adjudged to pay to the cross-petitioners the sum of $382. They denied all allegations in both petition and Retzman's answer not admitted. Retzman's reply to the cross-petition denied generally. Plaintiff replied to Retzman's answer, pleading that the contract sued upon was a New York contract, and not subject to the usury laws of Nebraska. Trial was had and the court found generally for defendants Retzman, and dismissed both the petition of plaintiff and cross-petition

of Alice G. and B. M. Simms.   From this judgment, the Building & Loan Association, and the cross-petitioners, Alice G. and B. M. Simms, prosecute appeal.

A brief outline of the evidence may conveniently be given before stating the contentions of the several parties to this appeal.   In 1895, B. M. Simms was engaged in the retail drug business at Alma, Nebraska, the business being carried on in a building located on lots owned by his wife, Alice G. Simms.   The real estate was mortgaged as alleged in the pleadings.   In March, 1895, Ferdinand Retzman purchased from the Simmses a half interest in the real estate and drug business. The deed from Simms to Retzman contained this clause:

"This conveyance is subject to an indebtedness of twelve hundred thirty-seven dollars in favor of National Mutual Building & Loan Association of New York, and one-half of said amount grantee herein assumes and agrees to pay as part of the consideration herein named."

The parties continued to do business as partners, apparently under the name of the "Simms Drug Company," for some three years.   In the course of time, however, the partnership proved highly unsatisfactory to both Simms and Retzman, and various attempts were made to separate, culminating on March 15, 1898, in the acceptance by Simms of an offer of $1,000 by Retzman for the former's half interest in all the real estate and drug business.   Thereupon a deed was executed by B. M. and A. G. Simms to Ferdinand Retzman, conveying the half interest belonging to Simms for a consideration of $1,000, the deed containing the following clause:

"This conveyance is made subject to a certain mortgage given by first parties to National Mutual Building & Loan Association, of New York, for the sum of $2,000, on which a large amount has been paid, second party assuming balance unpaid, which may be found to be due."

Appellant makes two principal contentions:   (1) That the contract sued on is a New York contract, and, tested by the laws of that state, is not usurious;   (2) that appel-

lees Retzman, purchasers of the equity of redemption, can not set up usury as a' defense, because such defense is personal to the borrower, and appellees purchased subject to the mortgage of appellant. The contention of the cross-petitioners Simms is that the trial court erred in not decreeing that Retzman should pay to them the sum of $382, inasumuch as his liability to them in that sum is a logical deduction from the conclusion that Retzman was without liability to appellant because the mortgage was usurious.

The first contention of appellant can scarcely be sustained. There is no question whatever made that, if tested by the laws of this state, the contract was indisputably usurious, and that at the time of bringing this suit the whole principal sum with legal interest had been more than paid. The only question, therefore, is whether the contract was a New York or Nebraska contract. It was doubtless the latter. Alice G. Simms was a resident of Alma, Nebraska. Appellant is a corporation of New York state. The contract was made by an agent of appellant located at Alma, Nebraska, and we must hold the contract a Nebraska contract under the test applied in *People's Building, Loan & Savings Ass'n v. Shaffer*, 63 Neb. 573, namely:

"Contracts made in Nebraska, with residents of this state, by a foreign building and loan association, if made by agents of such association within this state, are Nebraska contracts; and by their construction, validity and enforcement are governed by the laws of this state."

Appellant cites *Cheney v. Dunlap*, 27 Neb. 401; *McKnight v. Phelps*, 37 Neb. 858; *Building & Loan Ass'n of Dakota v. Walker*, 59 Neb. 456, and many cases from other states in support of the second contention, that appellee Retzman, not being a privy to the contract with A. G. Simms, but only the purchaser of the equity of redemption, can not plead the defense of usury. We think the authorities are very clear to the effect that usury is a defense personal to the borrower, his privies or representatives, to be waived by him but only available to him, and not to one who purchases his equity recognzing the validity of the

mortgage, and retaining from the purchase price a sum sufficient to pay such mortgage in full. The reason of the rule is not far to seek. Equity declares that the purchaser under such circumstances shall not be permitted to get a larger estate than he bargained for. The rule is based in the universal requirement of good faith, so that when the owner of the equity of redemption permits a reduction from his interest of the full amount of the usurious incumbrance, he never intends this as a gift or concession to his vendee, but as a waiver of the personal defense of usury; and when the vendee takes subject to the full incumbrance, including the usury, he forfeits the defense of usury, because he has already gotten all he bargained for, and the defense of usury would give him more than that, namely, the amount deducted from the purchase price by the owner of the equity upon the belief that the full amount of the incumbrance would be paid. Equity will not aid a purchaser to get an estate at a less price than he has agreed to pay for it. Hence, it is stated in *Hough v. Horsey,* 36 Md. 181, 11 Am. Rep. 484, cited by appellant herein, which was an attempt, by the purchaser of the land subject to a mortgage alleged to be usurious, to escape payment of the usury:

"If the mortgage debt were to be reduced on the present application, by reason of the alleged usury in the contract, it is manifest the complainant would get the estate purchased for less than she agreed to pay for it."

The rule is similarly stated in a quotation from 27 Am. & Eng. Ency. Law (1st ed.), 952, made by appellant. The inquiry accordingly is whether Retzman and Simms, at the time of the second transaction, by which Retzman acquired the half interest theretofore held by Simms, had in mind the usurious character of the incumbrance, and intended that there should be deducted from the purchase price only enough to pay the incumbrance, less usury. It is established by the evidence that at the time of the conveyance to Retzman of March 1, 1895, the amount of the indebtedness was understood by all parties to be $1,237,

as stated in the deed of that date, and that by accepting the conveyance, Retzman agreed and assumed half of this indebtedness, with the full understanding as to its amount and the terms and conditions under which it was to be paid. Thereafter, and until March 15, 1898, the partnership paid regularly $32 monthly to the local agent of appellant. In March, 1898, when the efforts of the partners to separate were about coming to fruition, and it was agreed that Retzman should buy Simms' interest, an attempt was made by the parties and those representing them to figure out the amount still due to appellant association upon the mortgage. All of the evidence on the part of appellee Retzman points clearly to the conclusion that Retzman, in assuming by the contemplated conveyance to him the sum still due on the mortgage, had in mind only the principal loan and interest at lawful rates under the usury laws of this state, assuming that the contract was highly usurious, and that in no event would he or Simms be liable beyond the principal and interest divested of usurious penalties. We do not hesitate in saying that from this same evidence, and other evidence in the record, it is fairly inferable that Simms also understood that the conveyance to Retzman contemplated the assumption by the latter of the amount due less any sum tainted with usury. In the evidence on behalf of appellees Retzman, it is claimed that the computation resulted in ascertaining that there remained due on the mortgage a sum not exceeding $100, possibly not more than $85. There is evidence also in the record that the deed of conveyance last made in 1898, as originally drawn, contained a specific provision that Retzman should not be liable on the mortgage beyond the sum due less any usurious penalties, but that this provision was stricken out or erased, and the words, "assuming balance unpaid which may be found to be due," inserted in their stead, upon the suggestion of Simms himself, who explained that because of a personal feeling of kindness because of good treatment from appellant towards him in the past, he did not care to have the obnoxious provision remain in the deed, as stated

by one witness, who made the alteration, "in black and white." B. M. Simms was called on behalf of cross-petitioners, but as we read his testimony, it fails to produce upon our minds any doubt as to the truth of the evidence already set out, which was doubtless credited by the trial court.

We think that no other conclusion can fairly be drawn from the evidence than that the parties, at the time of their last negotiations in March, 1898, both treated appellant's mortgage as tainted with usury, and that under the laws of this state the original mortgagor would not have been obligated to pay more than the principal sum with legal interest; and, further, that Retzman, in taking the latter conveyance, was retaining out of the purchase price only enough to pay "the balance which may be found to be due," without usury. The difference in the wording of the assumption clauses in the two deeds goes to sustain this view.

In *Essley v. Sloan,* 116 Ill. 391, 399, 6 N. E. 449, it is said:

"It would be inequitable, after his having received the benefit of the incumbrances by deducting the amount thereof from the consideration paid for the land, to permit him to keep it himself, and not apply it to the purpose for which it was set apart and reserved in his hands."

In Wiltsie, Mortgage Foreclosures, sec. 395, it is said:

"It is a general rule that a purchaser, whose conveyance is by its terms made subject to a prior mortgage, the amount of which is deducted as part of the consideration of the purchase, whether he expressly assumes it as a part of the purchase money or not, can not plead usury as a defense to the foreclosure of such mortgage."

We think from what has already been said, it will be apparent that the doctrine announced in the citations just made, is inapplicable to the facts in this case. In the *Essley* case, the decision is based in equitable considerations, namely, that the purchaser shall not be permitted to divert to himself money left in his hands by his grantor

for another purpose. In the quotation from Wiltsie, the foundation of the rule is said to be the deduction from the purchase price of the amount of the mortgage.

The facts in this case bring it within the doctrine as announced in *Maher v. Lanfrom,* 86 Ill. 513:

"If a party purchases from a mortgagor without any deduction from the price on account of the incumbrance, the grantee thereby becomes invested with the right to interpose the same defenses as might have been made by the mortgagor. In such case the conveyance amounts to an authority to the purchaser to interpose the defense of usury."

We fail to discern any conflict between these decisions. There was a deduction from the purchase price paid by Retzman because of appellant's mortgage, but the language in the deed, as well as the evidence, amply show that this deduction did not and was not intended to include usurious interest, and if it did not, then Simms never waived the defense of usury, and intended that Retzman should have the advantage thereof. If in the transfer of Simms' half interest there had been deducted the full amount of appellant's mortgage including all charges that entered into its usurious elements, there would be manifest inequity in permitting Retzman to defeat the mortgage for usury. If, on the contrary, no such deduction was made, but only a deduction sufficient to pay the loan with legal interest, less credits, there is no injustice in Retzman's plea of usury. We conclude that the judgment of the trial court, as between Retzman and appellant, dismissing the latter's petition, is right.

With reference to the demand of the cross-petitioners, Alice G. and B. M. Simms, for judgment in their favor against appellee Retzman, in case the court determines that appellee is not liable on appellant's mortgage, it follows necessarily from the conclusion already reached, that in denying their prayer the judgment of the trial court is also right. It was the theory of the cross-petitioners that there was a deduction from the purchase price on

account of this incumbrance in the sum of about $500, and as Retzman had paid only $118 to appellant, according to one computation, he was liable to them for the difference between the amount retained out of the purchase price for payment on the mortgage and the amount paid thereon. The evidence wholly fails to sustain this theory. On the contrary, the evidence shows that Retzman paid more than the parties at the time of the transfer agreed was still due. It is therefore recommended that the judgment of the trial court be in all respects affirmed.

HASTINGS, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.