COBE v. SUMMERS.

143  117
f151  ² 29

1. APPEAL AND ERROR—BRIEF—STATEMENT OF FACTS—PRESUMPTION OF CORRECTNESS.

Where appellee points out no incorrectness in the statement of the case made by appellant, it will be accepted as correct, though appellee also makes a statement.

2. BUILDING AND LOAN ASSOCIATIONS—CONTRACTS—CONSTRUCTION—WHAT LAW GOVERNS.

A note and mortgage executed in this State, by residents of this State, on lands situated in this State, in favor of a building and loan association, organized under the laws of another State, on which payments were made to local agents who, while not expressly provided for by the articles of association of the loan company, were recognized by it, constitute a Michigan contract which is governed by our laws respecting usury.

3. SAME—LOANS—COMPETITIVE BIDS—USURY.

Where the record of the proceedings of a building and loan as-

sociation, with respect to making a loan, does not show that the by-laws requiring competitive bids and notice of opening to bidders were complied with, any payments on the loan or on the stock amounting to more than the legal rate of interest will be deemed usurious. [1]

4. USURY—MORTGAGES—ESTOPPEL TO PLEAD—GRANTEE OF MORT-GAGOR.

Where the grantee of a mortgagor receives the benefit of no part of the usury complained of he is not estopped to set it up as a defense to foreclosure of the mortgage.

Appeal from Montcalm; Davis, J. Submitted November 15, 1905. (Docket No. 138.) Decided March 5, 1906.

Bill by Ira M. Cobe against Jacob G. Summers and others for the foreclosure of a mortgage. From a decree dismissing the bill, complainant appeals. Affirmed.

No objection being made to the statement of the case by complainant and appellant in his brief, it will be taken as correct. Counsel for appellee has also made a statement. The rule, however, requires the appellee to point out wherein the statement of the appellant is incorrect if he disputes it. The statement is substantially as follows: The bill of complaint was filed to foreclose a mortgage executed by defendant Jacob G. Summers and his wife, Mary, to the North American Savings, Loan & Building Company, dated January 23, 1890. That association was a corporation organized under the laws of Minnesota, with its principal place of business at St. Paul. Its manner of transacting business was provided by the laws of that State and the by-laws of the corporation. December 14, 1889, defendant Jacob G. Summers bid for a loan of $2,000, in which bid he agreed to hold 40 shares of stock in said corporation, and to pay installments on said stock until the same shall mature or the loan be paid. He further agreed to pay a bonus of 50 per cent. of the 40 shares

[1] As to usury in loans by building associations, see note to *Reeve* v. *Ladies' Building Ass'n* (Ark.), 18 L. R. A. 129.

of stock as a consideration for the loan of $2,000. December 18th he made a written application for a loan of $2,000, giving a description of the land, and a statement of its value, mortgages, taxes, and condition. January 4, 1890, the corporation executed and delivered to Mr. Summers a certificate for 40 shares of the stock. The certificate recited that he was to pay installments of 60 cents per share, payable to the treasurer of the company in St. Paul. Fifty-two cents of each monthly payment was to be paid on account of the loan fund, the remainder and all fees to go into the general or expense fund. The certificate contained many other statements unnecessary to mention. On January 23, 1890, Mr. Summers and wife executed the mortgage in question, and he gave an obligation reading as follows:

"$2,000.00.    SHERIDAN, MICHIGAN, January 23, 1890.

"After three years from date and before nine years from date, and at the time when stock numbered 725 in the North American Savings, Loan & Building Company of Saint Paul, Minnesota, shall be matured, I promise to pay to said company at Saint Paul, Minn., the sum of two thousand dollars, value received, with interest on said sum from the date of the application for loan, December 18, 1889, until the maturity of said stock and the payment of said sum at the rate of six per cent. per annum. Interest to be paid on or before the second Tuesday of each and every month until the maturity of the stock. Upon default being made in the payment of any installment of interest, the whole principal sum and interest to become due."

The mortgage contains the following:

"This mortgage being given to secure a loan on forty shares of stock in said North American Loan & Building Company; the monthly payments on which amount to $24 per month; said parties of the first part do further covenant and agree to make the said monthly payments on said stock as they shall become due until said stock becomes fully paid in, together with all fines that may accrue thereon.

"*Provided, nevertheless,* That if the said parties of the first part, their heirs, executors, administrators or assigns, shall well and truly pay or cause to be paid to the said party of the second part, its successors or assigns, at the office of its treasurer at St. Paul, Minnesota, or at the office of its trustee at Minneapolis, Minnesota, two thousand dollars and interest according to the conditions of one promissory note executed by Jacob G. Summers, one of said parties of the first part to said party of the second part, bearing even date herewith, payable after three years from date and before nine years from date, and at the time when stock numbered seven hundred and twenty-five in the North American Savings, Loan & Building Company shall be mature, with interest on two thousand dollars before and after maturity at the rate of six per cent. per annum until paid, interest payable monthly, or shall pay or cause to be paid to the treasurer of said company all installments of interest which become due on said note, and all fines and monthly payments which become due on said stock until said stock becomes fully paid in, and of the value of $100 per share, and before any of said installments of interest or monthly payments shall have been past due for a period of three months, and shall then surrender said stock to said company in payment of said note, then this deed shall be null and void, otherwise to remain in full force and effect."

Aside from the above statement, the mortgage is in the usual form. This mortgage was duly recorded. September 26, 1891, Summers and his wife deeded the lands, subject to the mortgage, to defendants Sanders and Barkham.

The company subsequently became insolvent, and a decree was entered in the proper court of the State of Minnesota declaring it insolvent and appointing a receiver. An order was made authorizing the receiver to sell, transfer, and assign certain assets of the corporation, including the mortgage in question, to Cobe and McKinnon. Subsequently, and by virtue of that order, the receiver executed to the complainant an assignment of the mortgage in question. The defendants Summers made no defense, and as to them the bill was taken as confessed. The other

defendants answered, and the case was heard upon pleadings and proofs taken in open court, and the bill dismissed on the ground (1) that the mortgage and note were executed in Michigan, and constitute a Michigan contract; (2) that they were and are usurious; and (3) that the defendants have paid them in full.

We deem it essential to make the following additional statement: On the back of the certificate of stock is a long agreement made between the Savings, Loan & Building Company and the St. Paul & Minneapolis Mortgage, Loan & Trust Company, by which the trust company is made the trustee of the building company for purposes unnecessary to mention. The certificate was never in the possession or control of defendant Summers. It was produced when the mortgage was executed, and his indorsement made thereon assigning it back to the company of which 20 shares were absolutely assigned as a bonus for the loan. The method of business is thus described in the deposition of the receiver:

"Twenty shares were assigned to the company absolutely to become the property of the company as a premium or bonus for the loan, bid by the borrower, Mr. Summers. The other 20 shares were assigned to the company as collateral, to be held until the loan was paid. It was expected that the loan would be paid by this last 20 shares maturing.

"*Q.* Who was to pay the dues upon these 40 shares of stock?

"*A.* The borrower, Mr. Summers, both on the premium and collateral stock. He was to pay these dues until the loan was paid by the terms of his mortgage and note."

The defendants, according to the receipt book held by the local agents, to whom payments were made, made 84 payments of $10 each as interest, 83 payments of $24 each without specifying upon what they were made, and one payment of $8, showing a total of $2,840.

Counsel for the complainant states his claim and account as follows:

| | |
|---|---|
| Amount of dues paid on 20 shares of premium stock, 84 months at $12 per month, less $300 | $1,005 00 |
| Amount of interest paid, 82 months at $10 per month | 820 00 |
| Total interest and dues on premium stock paid | $1,825 00 |
| Deduct interest accrued on face of loan on Jan. 13, 1898, as above | 1,120 00 |
| Balance of dues on premium stock and interest to apply on face of loan | $705 00 |
| Interest on $705 being above balance of premium and interest to apply on principal of loan, for average time 54½ months at 7 per cent | 224 12 |
| Membership fee on 20 shares of premium stock ___ $20 00 | |
| Interest on above membership fee from date when paid, to Jan. 13, 1898 ___ 11 20 | |
| Total membership fee and interest | 31 20 |
| Total to apply on principal of loan | $960 32 |

*Summary.*

| | |
|---|---|
| Face of loan | $2,000 00 |
| Total | $2,000 00 |
| Less amount to apply on loan as above | 960 32 |
| Balance due on loan Jan. 13, 1898 | $1,039 68 |
| Amount of complainant's claim | $1,039 68 |
| Interest from Jan. 13, 1898, to date of decree | 495 39 |
| Total | $1,535 07 |

*L. C. Palmer*, for complainant.

*Frank A. Miller* and *V. H. & L. W. Smith*, for defendants.

GRANT, J. (*after stating the facts*). 1. The facts in this case as to the time, place, and manner of execution of the mortgage and note involved are the same as those it *National Mut. Bldg. & Loan Ass'n* v. *Burch*, 124 Mich. 57, and *Hoskins* v. *Loan Ass'n*, 133 Mich. 505. The fact that the local board organized at the home of the defendants in Michigan was not expressly provided

for in the articles of association of the building and loan company does not affect the question. Such local agent was evidently recognized by the company, and the payments were all made to its local agents. The contract was therefore a Michigan contract under the above authorities. See, also, *National Mut. Bldg. & Loan Ass'n* v. *Retzman*, 69 Neb. 667.

2. A rather strict compliance with the law is required of these building and loan associations whose rules and methods of business are difficult for at least the average lay mind to readily comprehend. When, therefore, they seek to obtain more than the legal rate of interest under the plea of subscriptions to stock, bonuses, bids for loans, fines, etc., they must show that in making these loans they have complied with the provisions of the law under which they are operating. Sections 10 and 11 of article 3 of the by-laws of the association are as follows:

"SEC. 10. All applications for loans shall be made in writing on blanks to be furnished by the company, and all required questions must be fully answered.

"SEC. 11. All members filing applications shall have the privilege of bidding for loans. Bids shall be opened on the second Tuesday in each month and on such other days as the directors may appoint.

"Whenever the board is prepared to make a loan, a notice stating the time when the bids shall be opened, shall be sent by mail to every applicant at least fifteen days before the day for opening the bids."

These by-laws, therefore, require the making of competitive bids which shall be opened at specified times, and notice when they are to be opened to be sent to the applicant. There is no evidence in this record to show that this was done, and it cannot rest upon presumption. Where this provision has not been complied with and the payments made are more than the legal rate of interest, the contracts are held usurious. *Myers* v. *Building Ass'n*, 117 Mich. 389. In that case a minimum premium was required in contravention of the law. See, also,

*Clarke* v. *Connors*, 18 S. Dak. 600; 6 Cyc. p. 149; *Wight-man* v. *Suddard*, 93 Ill. App. 142.

Defendant Summers testified that he wanted a loan of $2,000 and talked with the company's agent about it, and they talked about the stock, and that the agent told him:

"If I borrowed it in that way, I could pay it in three years. I could pay it all up in three years. * * * Hayes [the company's agent] did all of this business for me. He made this loan. It was talked over with him and with the agent, and the understanding was, when I paid the $2,000 and interest, that was all there was of it."

It is quite manifest that Summers understood, and he had good reason to so understand, that, when he had paid this loan, he was entitled to some stock, and that he did not understand that he was to pay $4,000, $2,000 for his mortgage and $2,000 for stock. Complainant seeks to apply $12 per month under the contract on the bonus stock in which defendants in fact had no interest whatever. For what purpose 40 shares of stock should be issued in the name of Mr. Summers, and 20 shares immediately assigned back to the company, is rather incomprehensible to me. At all events, Summers was required, under complainant's theory, to pay $12 per month upon stock in which he had no interest. Defendants have paid considerably more than 6 per cent. on the loan. They paid 6 per cent. a year for many years on $2,000, when, in fact, they received only $1,860. Under the above authorities, and under *National Mut. Bldg. & Loan Ass'n* v. *Burch*, and *Hoskins* v. *Loan Ass'n*, supra, the contract must be held usurious.

3. It is next urged that defendants Sanders and Barkham are estopped to set up the defense of usury because they took the deed subject to the mortgage. In making the deed, both the grantor and the grantees treated this mortgage as securing only the loan of $2,000, and the defendants Sanders and Barkham purchased it, paying the value of the land less the amount which Summers had actually paid thereon. Where the grantee has received as a part of the consideration the benefit of the amounts

claimed to be usurious, the law estops him to set up usury. But where such amount has not been deducted from the purchase price, he is not estopped. *National Mut. Bldg. & Loan Ass'n* v. *Retzman,* supra; *Crawford* v. *Nimmons,* 180 Ill. 143; *Berdan* v. *Sedgwick,* 44 N. Y. 626.

The decree is affirmed, with costs.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.